### A05A2088. BOZZUTO v. THE STATE.
(624 SE2d 166)

ELLINGTON, Judge.

A White County jury convicted Frank Bozzuto of the offense of harassing phone calls, OCGA § 16-11-39.1 (a). Bozzuto appeals from his criminal conviction and sentence, claiming the trial court erred in denying his motion to dismiss on grounds of double jeopardy, in admitting improper character evidence, and in making comments during the trial intimating an opinion as to his guilt. We find no error and affirm.

1. Bozzuto claims the trial court subjected him to multiple punishments for the same offense in violation of the constitutional prohibition against double jeopardy.[1] Specifically, Bozzuto contends that, before he was convicted and sentenced for the offense of harassing phone calls, he was punished repeatedly by the trial court's handling of his bond. First, he argues the trial court punished him by imposing unreasonable bond conditions that were unrelated to the risks that conditions on bond are designed to address. Second, he claims that he was punished before being convicted when he was jailed for violating bond conditions at a time when he was not subject to any bond conditions. Third, he argues that the trial court punished him by failing to hold hearings on each of three bond revocations within a reasonable time of his arrest, causing him to be incarcerated in violation of his due process rights. "The appellate standard of review of a grant or denial of a double jeopardy plea in bar is whether, after reviewing the trial court's oral and written rulings as a whole,

---

[1] "The United States Constitution's Fifth Amendment Double Jeopardy Clause protects criminal defendants against (i) a second prosecution for the same offense after acquittal, (ii) a second prosecution for the same offense after conviction, and (iii) multiple punishments for the same offense." (Footnote omitted.) *Agee v. State*, 276 Ga. 536, 537 (579 SE2d 730) (2003).

the trial court's findings support its conclusion." (Citation and punctuation omitted.) *Simile v. State*, 259 Ga. App. 106, 107 (576 SE2d 83) (2003).

The record shows that Bozzuto's initial bond required that he not contact the victim, directly or indirectly. On August 4, 2003, the State moved to revoke Bozzuto's bond based on a letter he allegedly sent to the victim's place of business, and the trial court ordered that Bozzuto be arrested and held pending a hearing on the matter, which was originally scheduled for August 7, 2003. After scheduling four bond revocation hearings at which Bozzuto failed to have counsel available, the trial court issued a September 10, 2003 order directing that Bozzuto be held until a hearing could be scheduled. It is unclear from the record whether a bond revocation hearing was held before November 28, 2003, when Bozzuto was granted another bond and released.

The terms of Bozzuto's new bond required, among other things, that Bozzuto not contact the victim and three other persons, that he stay out of certain counties in north Georgia and North Carolina, and that he go to a Veterans Administration Hospital for a mental and physical evaluation. On August 23, 2004, the State moved to revoke the second bond, claiming that Bozzuto had been sighted numerous times in White County, from which he was banished. A revocation hearing was not held, however, because on September 22, 2004, the State moved to place the case on the dead docket with the express understanding that Bozzuto was in the process of moving and would no longer be in White County.

On December 8, 2004, the State moved to revoke Bozzuto's bond and return the case from the dead docket because Bozzuto had been in White County. A bond revocation hearing was set for January 28, 2005 in the Superior Court of White County. Bozzuto filed a petition for writ of habeas corpus with the White County Probate Court, which ordered him to be released on December 29, 2004. The trial court nevertheless revoked Bozzuto's bond on February 9, 2005, finding that Bozzuto had been in White County on December 8 and December 30, 2004, that the bond conditions had remained in effect after the case had been placed on the dead docket, and that the court was not estopped by the probate court's order from finding that Bozzuto violated the terms of his bond. Bozzuto was tried on the harassing phone calls charge on March 14, 2005.

Bozzuto does not cite to any supporting authority for his contention that his prosecution was barred by double jeopardy. Rather, Bozzuto tries to show that his due process rights were violated, and he assumes that such violations, if they occurred, were "punishment" for purposes of double jeopardy analysis. We cannot agree with this assumption. The perception of prior punishment by the defendant is

not sufficient to show double jeopardy, because "[t]he right against double jeopardy protects only against being twice placed in jeopardy of *criminal* punishment for the same offense." (Citations and punctuation omitted; emphasis in original.) *Anderson v. State*, 250 Ga. 500, 501 (300 SE2d 163) (1983). We acknowledge that "[d]ue process requires that a pretrial detainee not be punished." *Bell v. Wolfish*, 441 U. S. 520, 535, n. 16 (99 SC 1861, 60 LE2d 447) (1979). However, an appropriate remedy for improper pretrial detention is habeas corpus, and we can find no authority for the dismissal of the underlying indictment under the circumstances alleged in this case. See *Hood v. Carsten*, 267 Ga. 579 (481 SE2d 525) (1997) (reversing trial court's denial of petition for habeas corpus where defendant remained incarcerated without a bond revocation hearing); *Jones v. Grimes*, 219 Ga. 585, 587 (1) (b) (134 SE2d 790) (1964) (habeas corpus is an appropriate remedy for excessive bail); *United States v. Warneke*, 199 F3d 906, 908 (7th Cir. 1999) ("Pretrial detention does not trigger the attachment of 'jeopardy' so as to invoke the protection of the Double Jeopardy Clause. . . . If an excessively long period of pretrial confinement exceeds due process limits, the defendants' remedy is not a motion to dismiss, particularly not a motion to dismiss on double jeopardy grounds. It is to seek review of the detention order.") (citations omitted).

Bozzuto first contends that the conditions of his bond constituted a separate punishment for the offense of harassing phone calls because they were unreasonable and unrelated to the offense. Assuming that the imposition of conditions for bail can rise to the level of a criminal punishment, we are unable to conclude that Bozzuto's bond conditions constituted criminal punishment in this case. See *Halikipoulos v. Dillion*, 139 FSupp.2d 312, 315 (E.D. N.Y. 2001) (expressing "grave doubts whether the *sua sponte* imposition of a bail condition can ever be sufficient to attach jeopardy"). Because Bozzuto was charged with harassing the victim, the trial court in the first bond order reasonably prohibited Bozzuto from contacting the victim in the interest of public safety and to avoid the intimidation of a prosecuting witness. See OCGA § 17-6-1 (e) (2), (4); *Clarke v. State*, 228 Ga. App. 219, 220 (1) (491 SE2d 450) (1997). The trial court imposed more restrictive conditions for Bozzuto's second bond, including banishment from several counties. Given the nature of the underlying charge and the abusive content of the letter Bozzuto sent to the victim's workplace, we are satisfied that these conditions were intended to further the interests of public safety and not to act as a punishment for the harassing phone call charge. See *Clarke v. State*, 228 Ga. App. at 220 (1) (where a defendant was charged with battery, the trial court was authorized to require the defendant to avoid any contact with the victim as a condition of remaining free pending trial).

Bozzuto also claims his arrest on December 8, 2004 for violating bond conditions constituted punishment because there were no bond conditions in effect at that time, the State having placed his case on the dead docket on September 23. Bozzuto points out that the probate court concluded in separate habeas corpus proceedings that the bond conditions were no longer in effect on December 8, 2004 and contends that conclusion was binding on the superior court under the doctrine of res judicata. Even if we accept, without deciding, Bozzuto's argument that the bond conditions were not in effect on December 8, 2004, it does not follow that the trial court erred in denying his plea in bar. Here, Bozzuto was detained because he was in White County in apparent violation of his bond, and even if he was not validly incarcerated for violating his bond, he was not incarcerated in order to punish him for the harassing phone calls charge. *Shaw v. State*, 225 Ga. App. 193, 194 (1) (483 SE2d 646) (1997) (although trial court improperly revoked the defendant's bond for intentionally delaying the beginning of the trial by hiring new counsel, defendant's double jeopardy claim failed because the conduct leading to his bond revocation was not the conduct forming the basis for his prosecution).

Finally, Bozzuto claims he was punished when the trial court failed to hold hearings within a reasonable time after the State moved to revoke his bond. See *Hood v. Carsten*, 267 Ga. at 582 (state and federal due process requirements mandate that a hearing be held within a reasonable period of time after a motion for bond revocation). The record shows that after each of his three pretrial detentions, Bozzuto was held in anticipation of a bond revocation hearing. In the first two instances he was released, and after his third detention a hearing was held and his bond was revoked. The longest period Bozzuto may have been held without a hearing was following his initial detention on August 4, 2003. The trial court set a September 15, 2003 hearing date, but the record does not show whether the hearing was held, and Bozzuto was apparently only released after new bond conditions were set on November 28, 2003. However, the record also shows the trial court set four hearing dates after Bozzuto's initial detention that were each continued after he was unable to procure counsel. Even if we assume, without deciding, that a delay in holding a bond revocation hearing can rise to the level of criminal punishment for purposes of the attachment of jeopardy, the record does not support the conclusion that the delay in this case was due to a design by the State or the trial court to impose criminal punishment for the harassing phone calls charge. See, e.g., *Agee v. State*, 276 Ga. 536, 537 (579 SE2d 730) (2003) (defendant's pretrial detentions were for reasons unrelated to punishing him for the charges for which he claimed the bar of double jeopardy). Accordingly, we conclude that Bozzuto did not suffer multiple criminal punishment on account of

the harassing phone call charge, and the trial court did not err by refusing to bar the prosecution on grounds of double jeopardy.

2. Bozzuto claims the trial court erred by admitting improper character evidence. Specifically, Bozzuto claims the trial court erred in allowing the victim to testify over objection that the condominium association where the victim worked had experienced problems with Bozzuto showering at their facilities and leaving water on the weight room and Jacuzzi floor area, and that Bozzuto liked to bathe in the Jacuzzi. We disagree.

"Admission of evidence is a matter committed to the sound discretion of the trial court, and the trial court's evidentiary decisions will not be disturbed on appeal absent an abuse of discretion." (Citation omitted.) *Carswell v. State*, 263 Ga. App. 833, 834 (2) (589 SE2d 605) (2003). Generally, the character of the parties is irrelevant and "no evidence of a criminal defendant's general bad character or prior convictions shall be admissible unless and until the defendant shall have first put his character in issue." (Citation and punctuation omitted.) *Scruggs v. State*, 273 Ga. 752, 753 (2) (545 SE2d 888) (2001). However, "[e]vidence that is otherwise relevant and material to the issues in a criminal case does not become inadmissible simply because it incidentally puts a defendant's character or reputation into evidence." (Citations and punctuation omitted.) *Mize v. State*, 269 Ga. 646, 650 (3) (501 SE2d 219) (1998).

Pretermitting whether the disputed testimony is evidence of bad character, we conclude that the testimony was relevant and only incidentally reflected on Bozzuto's character. A few months before the telephone calls giving rise to the charge against Bozzuto, the condominium association sent Bozzuto a certified letter about his actions in showering and bathing in the weight room/Jacuzzi area. Bozzuto's allegedly harassing phone calls were made to the victim at her place of work at the condominium association. The evidence of a previous conflict between the condominium association and Bozzuto was relevant to whether Bozzuto made these telephone calls with the intent of harassing the victim. See OCGA § 16-11-39.1 (a) (offense includes telephoning repeatedly "for the *purpose* of annoying, harassing, or molesting another person") (emphasis supplied). See also *Friar v. State*, 253 Ga. 87, 89 (3) (316 SE2d 466) (1984) (evidence defendant forged traveler's checks taken from murder victim was integral to the murder case against defendant and only incidentally placed his character in issue). Accordingly, we conclude the trial court did not abuse its discretion in allowing evidence of the previous conflict between Bozzuto and the condominium association. See *Morgan v. State*, 275 Ga. 222, 223 (2) (564 SE2d 192) (2002) (defendant's prior abuse of his girlfriend and difficulties with the victim

were admissible to show defendant's motive, intent, and bent of mind in murdering victim, who argued with the defendant about the abuse).

3. Bozzuto claims the trial court made improper comments during the trial that intimated an opinion as to the guilt of the accused. We disagree.

OCGA § 17-8-57 provides in pertinent part that "[i]t is error for any judge in any criminal case, during its progress or in his charge to the jury, to express or intimate his opinion as to what has or has not been proved or as to the guilt of the accused." Although Bozzuto made no objection at trial regarding the conduct of the trial court, the plain error rule applies to criminal cases in which the trial court violates OCGA § 17-8-57. *Paul v. State*, 272 Ga. 845, 848-849 (3) (537 SE2d 58) (2000). Therefore, we must consider "whether the [trial] court violated OCGA § 17-8-57 and, if so, whether the violation constituted an obvious error or one that seriously affected the fairness, integrity, and public reputation of these judicial proceedings." (Citations and punctuation omitted.) *Seidenfaden v. State*, 249 Ga. App. 314, 318 (2) (547 SE2d 578) (2001).

Bozzuto claims the trial court erred because after defense counsel asked Bozzuto if he had ever received a bronze star, the trial court stated in front of the jury that if defense counsel asked Bozzuto that question, "I am going to consider that as putting his character into evidence." This was not an intimation of Bozzuto's guilt by the trial court. See *Lassic v. State*, 278 Ga. 701, 703 (2) (606 SE2d 266) (2004) (trial judge's remarks assigning a reason for a ruling are neither an improper expression of opinion nor a comment on the evidence).

Bozzuto also claims the trial court erred by interrupting defense counsel several times during voir dire, stating "we're not going there," and "the purpose of voir dire is . . . not to try your case," and by interrupting defense counsel during closing argument to inform the jury that "I will remind you that I give you what the law is. He can argue what he thinks the law says, but I'll give you that, okay." Again, the trial court did not plainly err because the interruptions of defense counsel did not intimate an opinion as to Bozzuto's guilt. See, e.g., *Mitchell v. State*, 271 Ga. 242, 243-244 (4) (516 SE2d 782) (1999) (trial court's admonishment of defense counsel not to give his own opinion in front of the jury did not deprive defendant of a fair trial).

*Judgment affirmed. Smith, P. J., and Adams, J., concur.*

DECIDED NOVEMBER 3, 2005 —
RECONSIDERATION DENIED DECEMBER 2, 2005 — 

*E. Paul Stanley*, for appellant.

*N. Stanley Gunter, District Attorney, Kerry I. Banister, Assistant District Attorney*, for appellee.