## A09A0886. CARRIE v. THE STATE.

(679 SE2d 30)

BLACKBURN, Presiding Judge.

Following a jury trial, Susan Ball Carrie was convicted on one count of child molestation.[1] She appeals her conviction and the denial of her motion for new trial, arguing that her trial counsel provided ineffective assistance of counsel (i) by eliciting and failing to object to numerous instances of bad character testimony, (ii) by failing to request a jury instruction on similar transaction evidence, (iii) by eliciting and failing to object to several instances of hearsay testimony, (iv) by failing to object to testimony regarding inadmissible evidence, (v) by apologizing to the victim's parents, (vi) by failing to object to the State prosecutor's comments regarding a witness's credibility during closing argument, and (vii) by failing to move to redact or object to inadmissible portions of a videotaped forensic interview of the victim. For the reasons set forth below, we affirm.

Viewed in the light most favorable to the verdict, *Davis v. State*,[2] the evidence shows that Carrie was the close family friend of 15-year-old I. C., who was in town from Florida to visit her father. Late in the afternoon of June 27, 2008, I. C. and her best friend K. G., who was 16 years old and also from Florida, went to a barbecue at Carrie's home. That night after most of the other guests had left, Carrie invited her friend Tim Bridges to her house. Carrie had been providing I. C. and K. G. with alcoholic beverages and marijuana, and when Bridges arrived, she had the two girls dance provocatively for Bridges and another older male friend. Later, Bridges led I. C., who was apparently intoxicated at this point, into Carrie's bedroom, and the two engaged in sexual intercourse. Shortly thereafter, K. G. came into the bedroom and was able to pull I. C. off the bed, at which point Carrie came into the room and began having sexual intercourse with Bridges in front of the two girls.

Early the next morning, K. G. was picked up by another family friend in order to catch a scheduled flight back home. Upon arriving at the airport, K. G. told the family friend about what had happened overnight. The family friend immediately informed I. C.'s mother, who then informed her father. The father picked up I. C. from Carrie's home and drove her to the hospital so that she could be examined for signs of sexual abuse. Later that day, I. C.'s father took her to the police station to report the incident.

Carrie was indicted on one count of aiding and abetting statutory rape, one count of child molestation based on her engaging in

---

[1] OCGA § 16-6-4 (a).

[2] *Davis v. State*, 275 Ga. App. 714, 715 (1) (621 SE2d 818) (2005).

sexual intercourse with Bridges in front of I. C., one count of enticing a child for indecent purposes, one count of pimping, and one count of pandering.[3] She was tried and convicted on the child molestation count but was acquitted on the counts of enticing a child for indecent purposes, pimping, and pandering. The trial court declared a mistrial on the statutory rape count after the jury was unable to reach a verdict. Thereafter, she obtained new counsel and filed a motion for new trial, alleging ineffective assistance of counsel. Following a hearing, the trial court denied Carrie's motion, giving rise to this appeal.

In her seven enumerations of error, Carrie cites more than thirty instances in which her counsel allegedly provided ineffective assistance.

> To establish ineffective assistance of counsel under *Strickland v. Washington*,[4] a criminal defendant must prove (1) that his trial counsel's performance was deficient, and (2) that counsel's deficiency so prejudiced his defense that a reasonable probability exists that the result of the trial would have been different but for that deficiency.

*Kurtz v. State*.[5] "Making that showing requires that [Carrie] rebut the strong presumption that [her] lawyer's conduct falls within the wide range of reasonable professional assistance." *Simpson v. State*.[6] "As a general rule, matters of reasonable trial tactics and strategy, whether wise or unwise, do not amount to ineffective assistance of counsel." (Punctuation omitted.) *Beck v. State*.[7] "We will not reverse a trial court's findings regarding either the deficiency or prejudice prong of the *Strickland* test unless clearly erroneous." *Kurtz*, supra, 287 Ga. App. at 825.

1. In her first enumeration of error, Carrie cites 19 separate instances in which her trial counsel allegedly provided ineffective assistance by failing to object to bad character evidence or by eliciting the same. "Generally, the character of the parties is irrelevant and no evidence of a criminal defendant's general bad character or prior convictions shall be admissible unless and until the defendant shall have first put his character in issue." (Punctuation

---

[3] Bridges was named as a co-defendant in the indictment and was charged on the same counts as Carrie with the exception of the pimping count. He pled guilty to the statutory rape charge and testified as a witness for the State at Carrie's trial.

[4] *Strickland v. Washington*, 466 U. S. 668, 687 (III) (104 SC 2052, 80 LE2d 674) (1984).

[5] *Kurtz v. State*, 287 Ga. App. 823, 825 (652 SE2d 858) (2007).

[6] *Simpson v. State*, 278 Ga. 336, 337 (2) (602 SE2d 617) (2004).

[7] *Beck v. State*, 292 Ga. App. 472, 474 (2) (a) (665 SE2d 701) (2008).

omitted.) *Bozzuto v. State*.[8] However, we have carefully reviewed the trial transcript and the motion for new trial transcript and have determined that ample evidence supported the trial court's finding that Carrie did not carry her burden of proving ineffective assistance. We now address these instances cited by Carrie.

(a) Carrie contends that her trial counsel provided ineffective assistance by failing to object to opening remarks from the State's prosecutor regarding the fact that I. C.'s mother thought Carrie was a bad person and did not want her daughter around her, and by eliciting and failing to object to similar testimony from several witnesses, including I. C., her mother, and her father. We disagree. A comment that a defendant has been in trouble or is a bad person does not place her character in issue, since it is unclear what is meant by such a remark. *Waugh v. State*.[9] See *Sneed v. State*.[10] Because these references did not put Carrie's character in issue, they were not subject to objection, and thus trial counsel's failure to object did not fall below the objective standard of reasonableness under *Strickland*. See *White v. State*.[11] See also *Harris v. State*[12] (counsel was not ineffective in failing to object to prosecutor's opening remarks referring to defendant as "totally evil" because a prosecutor's flights of oratory and figurative speech in opening statements are not reversible error).

(b) Carrie contends that her trial counsel performed deficiently by eliciting testimony from I. C.'s mother that in past interactions with Carrie, she had seen drug and alcohol use, and that Carrie had pulled a gun on her. We disagree. This testimony did not definitively indicate that Carrie had any prior criminal history and thus did not constitute bad character evidence. *Sneed*, supra, 267 Ga. App. at 642 (2) (c). Accordingly, the fact that her trial counsel elicited this testimony did not constitute deficient performance. See id.

(c) Carrie contends that her trial counsel performed deficiently by eliciting testimony from I. C. that Carrie had provided her and K. G. with marijuana on the night of the barbecue and that this error was compounded when the State questioned I. C. concerning the marijuana use during its re-direct examination. However, evidence "that one has used marijuana or drunk alcohol does not place one's character in issue." *Hearst v. State*.[13] Furthermore, "[t]he State is entitled to present evidence of the entire res gestae of a crime. This

---

[8] *Bozzuto v. State*, 276 Ga. App. 614, 618 (2) (624 SE2d 166) (2005).

[9] *Waugh v. State*, 263 Ga. 692, 692-693 (3) (437 SE2d 297) (1993).

[10] *Sneed v. State*, 267 Ga. App. 640, 641-642 (2) (c) (600 SE2d 720) (2004).

[11] *White v. State*, 267 Ga. 523, 525 (7) (481 SE2d 804) (1997).

[12] *Harris v. State*, 279 Ga. 522, 525 (4) (615 SE2d 532) (2005).

[13] *Hearst v. State*, 212 Ga. App. 492, 496 (2) (b) (4) (441 SE2d 914) (1994).

is so even if the defendant's character is incidentally placed in issue." *Corza v. State*.[14] See *Fuller v. State*[15] (State's questions regarding defendant's alcohol or drug use on the day of the crime was admissible as part of the res gestae even if it placed his character into evidence). Thus, trial counsel did not perform deficiently in this regard, and the trial court did not err in rejecting Carrie's claim of ineffective assistance of counsel on this ground. See *White*, supra, 267 Ga. at 525 (7).

(d) Carrie contends that her trial counsel performed deficiently by eliciting and failing to object to testimony from Bridges and K. G. that Carrie had previously paid other girls to dance erotically at her home. Specifically, she argues that this testimony impermissibly placed her character into evidence because it constituted similar transaction evidence demonstrating that she had previously engaged in providing sex for money. These claims are without merit. Pretermitting whether this testimony constituted similar transaction evidence, its primary relevance related to the counts of enticing a child for indecent purposes, pimping, and pandering, on which Carrie was acquitted. Such a result "strongly supports the conclusion that the assistance actually rendered by [Carrie's] trial counsel fell within that broad range of reasonably effective assistance which members of the bar in good standing are presumed to render." (Punctuation omitted.) *Jackson v. State*.[16] See *Hodge v. State*.[17] Accordingly, the trial court did not err in denying Carrie's claim of ineffective assistance of counsel on this ground.

(e) Carrie also contends that her trial counsel elicited bad character evidence when he asked Bridges if Carrie's husband had participated in the acts alleged by I. C., which resulted in Bridges's responding that her husband was not there because he was incarcerated. Specifically, Carrie argues that this testimony implied that she associated with persons of bad character. This claim is without merit. "[A] nonresponsive answer that impacts negatively on a defendant's character does not improperly place [her] character in issue." (Punctuation omitted.) *Walker v. State*.[18] Furthermore, "mere mention that a defendant has been in jail falls short of placing his character at issue." *Taylor v. State*.[19] It therefore follows that a passing reference to the fact that Carrie's husband was incarcerated would also fall short of placing her character at issue. Accordingly,

[14] *Corza v. State*, 273 Ga. 164, 166 (2) (539 SE2d 149) (2000).

[15] *Fuller v. State*, 230 Ga. App. 219, 220-221 (2) (496 SE2d 303) (1998).

[16] *Jackson v. State*, 281 Ga. App. 506, 511 (3) (636 SE2d 694) (2006).

[17] *Hodge v. State*, 287 Ga. App. 750, 753 (2) (b) (652 SE2d 634) (2007).

[18] *Walker v. State*, 282 Ga. 703, 705 (2) (653 SE2d 468) (2007).

[19] *Taylor v. State*, 272 Ga. 559, 561 (2) (c) (532 SE2d 395) (2000).

the trial court did not err in denying Carrie's claim of ineffective assistance of counsel on this ground.

(f) Carrie contends that her trial counsel performed deficiently by failing to object when the State elicited hearsay testimony from a witness, which suggested that Carrie attempted to avoid arrest in this matter. Carrie argues that such testimony placed her character in issue. This argument is without merit.

At trial, Carrie testified that she turned herself in to the police upon being charged in this matter. To rebut this testimony, the State introduced the testimony of Bridges's wife, who testified that she informed the police of Carrie's whereabouts so that the police could arrest her. At one point during that testimony, Mrs. Bridges stated that the officer with whom she spoke told her that the police were "trying to catch" Carrie. On re-direct examination, Mrs. Bridges again began to repeat something that the police told her but was stopped by the court. Additionally, the State referenced Mrs. Bridges's testimony during its closing argument as evidence that Carrie was dishonest about turning herself in to the police.

Carrie argues that her trial counsel performed deficiently by not objecting to this hearsay, which placed her character in issue, and by not objecting to the State prosecutor's reference to it during closing argument. However, "[t]he flight of the accused, where and when arrested, whether [she] resisted or not, how [she] was armed, and all the circumstances attending [her] arrest, are admissible to be considered by the trier of fact for what they are worth." (Punctuation omitted.) *Blake v. State*.[20] Thus, Mrs. Bridges's testimony generally was admissible and relevant to the circumstances surrounding Carrie's arrest, even if it did incidentally place her character in issue. See id. Furthermore, although Mrs. Bridges's testimony regarding what the officer told her was hearsay, Carrie has failed to show that she was prejudiced as a result. Mrs. Bridges's hearsay testimony was merely cumulative of the rest of her testimony, in which she stated that she was the one who turned Carrie in to the police, "and so it is unlikely that the jury would have reached a different verdict if the hearsay testimony had not been admitted." *Moore v. State*.[21] Thus, the trial court did not err in finding that counsel's failure to object to this testimony did not constitute ineffective assistance. See id.

(g) Carrie contends that her trial counsel performed deficiently by eliciting additional hearsay testimony from Mrs. Bridges by asking her if her husband told her that he had sex with a 15-year-old

[20] *Blake v. State*, 272 Ga. App. 181, 182 (2) (612 SE2d 33) (2005).
[21] *Moore v. State*, 283 Ga. App. 533, 536-537 (1) (642 SE2d 163) (2007).

girl. She further claims that she was prejudiced when Mrs. Bridges responded that her husband only told her that he engaged in oral sex but that she "found out later that it was a whole lot of other stuff." This contention is without merit. First, Mrs. Bridges's hearsay testimony impugned her husband's character but had little, if anything, to do with Carrie's character. Furthermore, the testimony was cumulative of testimony that had been given by several other witnesses during the course of the trial, and thus it is unlikely that the jury would have reached a different verdict if it had not been admitted. See *Moore*, supra, 283 Ga. App. at 536-537 (1). Accordingly, the trial court did not err in finding that counsel's elicitation of this testimony did not constitute ineffective assistance. See id.

2. Carrie contends that her trial counsel provided ineffective assistance by failing to object to similar transaction evidence and by failing to request a jury charge on that issue. As we noted in Division 1 (d), regardless of whether any of the evidence suggesting that Carrie previously paid other girls to dance erotically at her home constituted similar transaction evidence, such evidence was relevant to the counts of enticing a child for indecent purposes, pimping, and pandering, on which Carrie was acquitted. This result "strongly supports the conclusion that the assistance actually rendered by [Carrie's] trial counsel fell within that broad range of reasonably effective assistance which members of the bar in good standing are presumed to render." (Punctuation omitted.) *Jackson*, supra, 281 Ga. App. at 511 (3). See *Hodge*, supra, 287 Ga. App. at 753 (2) (b). Accordingly, the trial court did not err in denying Carrie's claim of ineffective assistance of counsel on this ground.

3. Carrie also contends that her trial counsel provided ineffective assistance by failing to object to numerous instances of hearsay testimony proffered by various witnesses during the trial. These contentions are without merit. Again, we have carefully reviewed the trial transcript and the motion for new trial transcript and have determined that ample evidence supported the trial court's finding that Carrie did not meet her burden of proving ineffective assistance. All of the alleged instances of hearsay testimony cited by Carrie in this enumeration of error were cumulative of other properly admitted testimony. It is therefore unlikely that the outcome of Carrie's trial would have been different if the hearsay testimony had not been admitted. *Moore*, supra, 283 Ga. App. at 536-537 (1). Accordingly, the trial court did not err in finding that counsel's failure to object to this testimony did not constitute ineffective assistance. See id.

4. Carrie argues that her trial counsel provided ineffective assistance by not objecting to the State's reference to her cellular telephone records despite the fact that those records were not admitted into evidence. We disagree.

During the trial, the State questioned one of the investigating police officers regarding the fact that I. C. had claimed that Carrie had called Bridges on the day of the barbecue to invite him to her home. The officer testified that she was able to verify I. C.'s claim by reviewing records of Carrie's cellular phone calls, which were produced by Carrie's cellular service provider. The officer further testified that the records indicated that Carrie had called Bridges at least 14 times that day and also indicated at what time those calls occurred. The State then attempted to tender the records into evidence; however, Carrie's counsel successfully objected to their admission on the ground that they had not been properly authenticated.

Carrie argues that counsel performed deficiently by not objecting when the officer initially referred to the phone records and by not objecting when the State referred to the records on several occasions later in the trial, including during closing argument. However, even if her trial counsel performed deficiently by not objecting to the State's references to these records, Carrie has not demonstrated that she was prejudiced as a result. I. C., K. G., and Bridges testified that Carrie called Bridges on the day of the barbecue to invite him to her house. Therefore, the records were cumulative and not prejudicial. See *Moore*, supra, 283 Ga. App. at 536-537 (1). Furthermore, Carrie also testified that she called Bridges several times leading up to that night but claimed that she did so to discuss a vehicle that she was trying to sell. Although Carrie denies that she called Bridges 14 times, the more significant dispute concerned the substance of their conversations, which the phone records did not reflect. See *Bray v. State*.[22] Thus, it is unlikely that the outcome of Carrie's trial would have been different if her trial counsel had objected to the State's reference to those records. See id.; *Moore*, supra, 283 Ga. App. at 536-537 (1). Accordingly, the trial court did not err in finding that Carrie failed to show that she received ineffective assistance of counsel.

5. Carrie further argues that her trial counsel provided ineffective assistance by referring to K. G. as a "co-victim" during his opening statement and by apologizing to I. C.'s parents for their pain during his cross-examination of them. This argument is without merit.

During the hearing on Carrie's motion for new trial, her trial counsel explained that he referred to K. G. as a co-victim in order to emphasize that despite the fact that she was present during all of the incidents for which Carrie was charged, her statements would prove

---

[22] *Bray v. State*, 294 Ga. App. 562, 563 (2) (a) (669 SE2d 509) (2008).

to be inconsistent with those of I. C. He also testified that he apologized to I. C.'s parents so that the jury would not think he was being disrespectful to them. Although trial counsel claimed that his actions were error and not based on strategy, his actual explanations belie his post-trial mea culpas[23] and indicate that his actions here were strategic decisions. See *Keith v. State*.[24] "Under the circumstances, we cannot say that defense counsel's strategy was unreasonable, and we will not use hindsight to second-guess that strategy." *Rayshad v. State*.[25] Accordingly, the trial court did not err in rejecting Carrie's claim of ineffective assistance of counsel on this ground.

6. Carrie contends that her trial counsel was ineffective in failing to object when the State's prosecutor expressed his belief during closing that a defense witness was not credible. We disagree.

At trial, Carrie proffered Michael Bairta as a defense witness, who testified that in the early morning hours after Carrie's barbecue, he was playing cards at a house across the street when he and his friends saw two girls resembling I. C. and K. G. come out of Carrie's house. He further testified that the girls got into Carrie's automobile, attempted to back down her driveway, but stopped when they scraped the side of the vehicle against a low retaining wall. Bairta added that several minutes later, the girls were picked up by a white van. During Carrie's closing argument, her trial counsel contended that Bairta's testimony supported the defense theory that the girls had snuck out of Carrie's house and that their liaison with Bridges occurred without Carrie's knowledge. He further argued that Bairta's testimony was not disproved or discredited in any way. In the State's closing argument, the prosecutor responded as follows:

> And then he wants you to believe Michael Bairta. I didn't believe, you should not believe anything he said. That man got caught up in his own testimony in his own words. He didn't know what he was talking about. Then he says he

---

[23] We would be remiss if we failed to note that this case is yet another example of the worrying trend of trial counsel emphatically and even eagerly testifying to his own incompetence. In fact, during the hearing on the motion for new trial, Carrie's trial counsel repeatedly described his performance as "inept" and "bad lawyering." Counsel also went to great lengths to deny that his actions had any strategic purpose. Whether counsel's assessment of his performance was an honest admission of incompetency or a disingenuous attempt to secure a new trial for his former client is not for our determination. However, as we have previously noted, this trend is dangerous to the administration of justice if it is allowed to continue without any consequences for trial counsel. See *Nejad v. State*, 296 Ga. App. 163, 169 (674 SE2d 60) (2009) (Smith, P. J., concurring specially).

[24] *Keith v. State*, 279 Ga. App. 819, 827 (6) (f) (632 SE2d 669) (2006).

[25] *Rayshad v. State*, 295 Ga. App. 29, 36 (2) (a) (670 SE2d 849) (2008).

doesn't drink. You can ask yourselves whether or not you believe that.

Carrie contends that her trial counsel should have objected to this argument. "It is improper for counsel to state to the jury counsel's personal belief as to the veracity of a witness; however, it is not improper for counsel to urge the jury to draw such a conclusion from the evidence." (Punctuation omitted.) *Adams v. State.*[26] Here, although it appears that the State's prosecutor started to state his personal belief that Mr. Bairta lacked credibility, he stopped short of doing so and instead argued that the jury should draw such a conclusion from the evidence. See id.; *Boyd v. State;*[27] *Williamson v. State;*[28] *Navarro v. State.*[29] Thus, trial counsel's failure to object to these comments was not deficient performance. Moreover, given that the trial court instructed the jury that closing arguments were not evidence and that it was the sole arbiter of the credibility of witnesses, we conclude that Carrie has failed to show that, if trial counsel had objected to the prosecutor's comment, there is a reasonable probability that the outcome of her trial would have been different. See *Jackson v. State.*[30] Accordingly, the trial court did not err in rejecting Carrie's claim of ineffective assistance of counsel on this ground.

7. Carrie contends that her trial counsel provided ineffective assistance by failing to object to portions of a recorded interview of I. C., which bolstered her credibility, and by failing to object to additional bolstering testimony offered by the psychologist who had conducted the interview. We disagree.

At trial, the State played a videotaped recording of a forensic interview of I. C., which was conducted by a psychologist employed by a child advocacy center. Toward the end of the interview, the psychologist told I. C., "You know you did a good thing, by telling right away, right?" Upon direct examination, the State's prosecutor asked the psychologist: "In your course of interviewing the victim in this case, [I. C.], did you ever have any reason to believe that she was lying to you?" The psychologist responded: "Not based on her interview with me. There wasn't anything that she said that jumped out at me that I would have a big concern about."

Carrie argues that her trial counsel should have objected to both of these instances of bolstering. It is well established that "credibility

[26] *Adams v. State*, 283 Ga. 298, 302 (3) (e) (658 SE2d 627) (2008).
[27] *Boyd v. State*, 289 Ga. App. 342, 345-346 (4) (656 SE2d 864) (2008).
[28] *Williamson v. State*, 285 Ga. App. 779, 784-785 (5) (a) (648 SE2d 118) (2007).
[29] *Navarro v. State*, 279 Ga. App. 311, 318 (4) (c) (630 SE2d 893) (2006).
[30] *Jackson v. State*, 282 Ga. 494, 498 (3) (651 SE2d 702) (2007).

of a witness is a matter for the jury, and a witness'[s] credibility may not be bolstered by the opinion of another witness as to whether the witness is telling the truth." *Branesky v. State*.[31] However, here, the psychologist's comment that I. C. did a good thing by immediately reporting the sexual abuse did not amount to bolstering I. C.'s credibility. See *Turner v. State*.[32] While the colloquy between the State's prosecutor and the psychologist regarding whether the psychologist thought I. C. was lying did constitute improper bolstering, we conclude that Carrie has failed to prove that the testimony so prejudiced her defense as to affect the outcome of her trial. See *Gosnell v. State*[33] (expert's testimony that her findings did not mean victim was lying was improper bolstering but trial counsel's failure to object did not prejudice defense). The testimony consisted of only this one response that occurred during the course of a six-day trial with two dozen witnesses. Furthermore, the videotaped interview of I. C., regarding which the psychologist was testifying, was played during trial, thus allowing the jury to form their own assessment of I. C.'s credibility. Additionally, I. C.'s account of the incident remained generally consistent beginning with when she first informed her parents, to when she was interviewed by the police and the psychologist, and to when she testified at trial. Moreover, Carrie had a full opportunity to test I. C.'s credibility during cross-examination. Under these circumstances, there is no reasonable likelihood that the results of the trial would have been different absent the State prosecutor's impermissible colloquy with the psychologist. See id. at 511-512 (3). In fact, trial counsel was so effective that Carrie was acquitted on three of the charges in the indictment, and the jury was unable to reach a verdict on the statutory rape charge, resulting in a mistrial. See id. at 512 (3).

Considering the collective prejudicial effect of all of trial counsel's deficiencies that we have either found or assumed in the discussion above, we conclude as a matter of law that the absence of those deficiencies would not in reasonable probability have changed the outcome of Carrie's trial. *Hall v. Brannan*.[34] See *Schofield v. Holsey*[35] (holding that the combined effect of trial counsel's deficiencies should be considered). Accordingly, the trial court did not err in denying Carrie's claims of ineffective assistance of counsel.

*Judgment affirmed. Adams and Doyle, JJ., concur.*

---

[31] *Branesky v. State*, 262 Ga. App. 33, 36 (3) (a) (584 SE2d 669) (2003).

[32] *Turner v. State*, 253 Ga. App. 760, 762 (2) (560 SE2d 539) (2002).

[33] *Gosnell v. State*, 247 Ga. App. 508, 511-512 (3) (544 SE2d 477) (2001).

[34] *Hall v. Brannan*, 284 Ga. 716, 725 (II) (D) (670 SE2d 87) (2008).

[35] *Schofield v. Holsey*, 281 Ga. 809, 811 (II), n. 1 (642 SE2d 56) (2007).

DECIDED MAY 4, 2009 —
RECONSIDERATION DENIED MAY 20, 2009 — 

*Barry M. Hazen*, for appellant.
*Paul L. Howard, Jr., District Attorney, Peggy R. Katz, Assistant District Attorney*, for appellee.