### A11A1041. STRICKLAND v. THE STATE.
(715 SE2d 798)

MIKELL, Judge.

Clarence Strickland was charged by indictment with aggravated sodomy against his daughter B. S. (Count 1); with child molestation against his daughter C. S. (Count 2); and with three counts of child molestation against his girlfriend's daughter, K. J. (Counts 3, 4, and 5). Following a jury trial, he was found guilty on Count 1 of aggravated sodomy and sentenced to 30 years to serve on that count. He was acquitted on Counts 3, 4, and 5. The jury deadlocked on Count 2, and the trial court declared a mistrial as to that count. Strickland appeals his conviction for aggravated sodomy and the denial of his motion for new trial, contending that he received

---

[1] 298 Ga. App. 584 (680 SE2d 627) (2009).
[2] *State v. Miller*, 287 Ga. 748 (699 SE2d 316) (2010).

ineffective assistance of counsel. We affirm.

Viewing the evidence in the light most favorable to the jury's verdict,[1] the record reflects that B. S., C. S., and K. J. each testified against Strickland. B. S., eleven years old at the time of trial, testified that when she was around eight years old, Strickland put his hands behind her head, pushed her head down over his penis, and forced her to suck his penis and to "drink his pee." Strickland told B. S. that if she told what had happened, she would get a "whooping."

C. S., aged 16 at the time of trial, was B. S.'s half-sister. C. S. testified that in May 2007, when she was 14, Strickland came into her bedroom, kissed her neck, and touched her breast. He walked out but came back, said he was sorry, gave her some money, and asked her not to tell.

K. J., C. S.'s older half-sister, was 18 at the time of the trial. K. J. explained that Strickland was not her biological father, but that from the time he moved in with her mother when K. J. was six months old, he was "the only daddy [she] knew." K. J. testified that early one morning in 2002, when she was eleven years old, Strickland had her sit on his lap; that he fondled her vagina; and that he moved her hand onto his "hard penis." When K. J. felt Strickland's penis against her vagina, she started to cry. Strickland stopped, said he was sorry, and told her not to tell anyone or she would be in trouble. Although K. J. revealed this incident to C. S. shortly after it occurred, K. J. did not call the police until 2008, when C. S. told her that Strickland had touched her breast in May 2007. K. J. testified that when she learned of Strickland's behavior to C. S., she "felt like somebody needed to know." She "felt like it wasn't never going to end," so she called the police.

On June 11, 2008, after receiving a 911 call concerning alleged child molestation, a DeKalb County police officer went to Strickland's home and spoke to B. S. When he asked her if her father had ever touched her inappropriately, she nodded yes and pointed to her vagina. The officer then called in Detective Kimberly Aviles, of the Special Victims Unit of the DeKalb County Police Department. Aviles came to Strickland's home and spoke to B. S., who told Aviles that when she was about seven years old, Strickland exposed his penis to her and made her suck it, then peed in her mouth and made her drink it. At that point, Aviles ended the interview in order that B. S. could have a taped forensic interview with the Georgia Center of Child Advocacy. Aviles also spoke with C. S., who stated that Strickland had fondled her breasts. The children asked Aviles if they would have to stay in the house with Strickland, because they had

---

[1] *Al-Amin v. State*, 278 Ga. 74 (1) (597 SE2d 332) (2004).

been told they would get a "whooping" if they told anyone. Aviles arranged for the children to stay with their grandmother, Geraldine Hardnett. Hardnett testified that after B. S. came to stay with her, B. S. told her that Strickland put his penis in her mouth and peed in her mouth.

On June 12 or 13, 2008, Dr. Danielle Levy, a psychologist, conducted a forensic interview of B. S. at the Georgia Center for Child Advocacy. Levy testified without objection as an expert in forensic interviewing with children of childhood sexual abuse. Levy testified that in her opinion, and based upon her training and experience, she found her interview with B. S. to be consistent with the interview of a child who had been sexually abused.

The state also introduced similar transaction evidence through the testimony of C. M., a niece of Strickland's wife and a cousin of B. S. C. M. testified that on one occasion when she was thirteen, Strickland touched her breast and afterward gave her money.

Strickland testified at trial, denying all wrongdoing.

1. Although Strickland does not challenge the sufficiency of the evidence on appeal, we conclude that the evidence adduced at trial was sufficient under the standard set forth in *Jackson v. Virginia*[2] to authorize the jury to find him guilty of aggravated sodomy beyond a reasonable doubt.

2. Strickland contends that he received ineffective assistance of counsel. In order to prevail on such a claim, Strickland "must show that counsel's performance was deficient and that, but for that deficient performance, there is a reasonable probability that the outcome of his trial would have been different."[3] In evaluating the first prong of this test, "[a] strong presumption exists that counsel's conduct falls within the broad range of professional conduct."[4] "Failure to satisfy either component of this test is fatal to an ineffectiveness claim. Moreover, the court need not address both components if the defendant has made an insufficient showing on one of them."[5] On appellate review of the trial court's ruling, "[w]e accept the trial court's factual findings and credibility determinations unless clearly erroneous, but we independently apply the legal principles to the facts."[6]

(a) Strickland argues that his trial counsel rendered ineffective

---

[2] 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

[3] (Footnote omitted.) *Jackson v. State*, 282 Ga. 494, 497 (2) (651 SE2d 702) (2007).

[4] (Citation omitted.) *Browning v. State*, 283 Ga. 528, 529 (2) (661 SE2d 552) (2008).

[5] (Footnotes omitted.) *Brown v. State*, 309 Ga. App. 511, 517-518 (4) (710 SE2d 674) (2011).

[6] (Citation and punctuation omitted.) *Robinson v. State*, 277 Ga. 75, 76 (586 SE2d 313) (2003).

assistance by failing to object to certain testimony given by Aviles. In explaining why she ended her interview with B. S. after B. S. told her of Strickland's inappropriate behavior, Aviles testified as follows:

> At that time I ascertained that a molestation incident occurred, and we like to use the Georgia Center for Child Advocacy for any kind of further information. I had what I needed to know: that an incident had occurred and anything further would be ascertained during that interview, that forensic interview, which is seen as more of a nonbias interview.

Strickland contends that trial counsel's failure to object to this testimony constituted deficient performance. He argues that Aviles's statement that "a molestation incident occurred" improperly bolstered the credibility of B. S., the prosecuting witness. We do not agree that counsel's failure to object to this testimony amounted to deficient performance.

"It is well established that credibility of a witness is a matter for the jury, and a witness's credibility may not be bolstered by the opinion of another witness as to whether the witness is telling the truth."[7] In this case, however, the testimony complained of, when "reviewed in the context in which it was given,"[8] was not a statement of B. S.'s credibility or an invasion of the province of the jury. In context, Aviles's testimony concerned her reason for ending her interview with B. S. and referring B. S. to the Georgia Center for Child Advocacy. Aviles testified that after she was called in to the case by the officer who responded to the 911 call, she interviewed the then ten-year-old B. S. B. S. told Aviles of Strickland's "not okay" touches when B. S. was around seven years old and in the first grade. At that point, Aviles ended the interview. Aviles explained that the police department has "a protocol that once a child makes an outcry and we have established basic details of that, that we would set up a forensic interview with the Georgia Center [for] Child Advocacy." Thus, Aviles's testimony did not speak to B. S.'s credibility, but only to Aviles's reasons for ending the interview at that time. Her testimony was "not a clear comment on [B. S.]'s credibility as to [her] allegations of molestation,"[9] and counsel's failure to object did not indicate deficient performance. We note that trial counsel was so effective that Strickland was acquitted on three counts of child

---

[7] (Citation and punctuation omitted.) *Carrie v. State*, 298 Ga. App. 55, 63-64 (7) (679 SE2d 30) (2009).

[8] *Branesky v. State*, 262 Ga. App. 33, 36 (3) (a) (584 SE2d 669) (2003).

[9] Id.

molestation and the jury deadlocked on a fourth count, resulting in a mistrial.[10]

Moreover, even if Aviles's testimony that "a molestation incident occurred" did constitute improper bolstering, Strickland has failed to show a reasonable probability that the testimony at issue so prejudiced his defense as to affect the outcome of the trial. B. S.'s account of the incident remained consistent throughout, beginning with her first outcry to the police, her interview with Aviles, her interview with the psychologist, her outcry to her grandmother, and her testimony at trial; and Strickland had full opportunity to test B. S.'s credibility during cross-examination.[11] Moreover, C. S., K. J., and C. M. all testified to similar incidents. It was not error to deny Strickland's motion for new trial on this ground.

(b) Strickland contends that his trial counsel rendered ineffective assistance in failing to object when the prosecutor stated in closing, "what those girls said on the stand, it had the ring of truth." Although "[i]t is improper for counsel to state to the jury counsel's personal belief as to the veracity of a witness[,] it is not improper for counsel to urge the jury to draw such a conclusion from the evidence."[12] When the prosecutor's statement is judged in the context in which it was made,[13] it is clear that he was urging the jury to draw conclusions from evidence in the case — the testimony of the three girls, B. S., C. S., and K. J. Strickland's counsel argued in closing that the three girls were following C. S. in fabricating their accusations against Strickland. In response, the prosecutor pointed out that if the three complaining witnesses had been conspiring together to make up accusations against Strickland, they would have made up stories which were more consistent and more shocking. The comments of which Strickland complains were permissible "since they are the conclusion the prosecutor wished the jury to draw from the evidence, and not a statement of the prosecutor's personal belief as to the veracity of a witness."[14] Thus, counsel's failure to object to these comments during closing argument did not constitute deficient

---

[10] See *Carrie*, supra at 64 (7); *Gosnell v. State*, 247 Ga. App. 508, 512 (3) (544 SE2d 477) (2001).

[11] See *Carrie*, supra.

[12] (Citation and punctuation omitted.) *Adams v. State*, 283 Ga. 298, 302 (3) (e) (658 SE2d 627) (2008).

[13] Id.

[14] (Citations omitted.) *Mason v. State*, 274 Ga. 79, 80 (2) (b) (548 SE2d 298) (2001) (prosecutor's argument that witness is "telling you the honest truth" was not improper) (id. at 80 (2), n. 2). Compare *Collier v. State*, 266 Ga. App. 345, 356-357 (3) (b) (596 SE2d 795) (2004) (prosecutor's comment that witness's testimony "sounds just like the truth *to me*. It's got the ring of truth to it" was improper statement of his personal belief as to witness's veracity) (emphasis supplied).

performance.[15] The trial court did not err in denying Strickland's motion for new trial on this ground.

*Judgment affirmed. Smith, P. J., and Dillard, J., concur.*

DECIDED AUGUST 16, 2011.

*Long D. Vo,* for appellant.

*Robert D. James, Jr., District Attorney, Deborah D. Wellborn, Assistant District Attorney,* for appellee.

---

[15] See id.; accord *Adams,* supra.