### A08A1901. DYER v. THE STATE.
(672 SE2d 462)

MILLER, Chief Judge.

A Habersham County jury convicted Bobby Ray Dyer on one count of aggravated sexual battery (OCGA § 16-6-22.2) and one count of child molestation (OCGA § 16-6-4 (a)). Dyer appeals from the denial of his motion for a new trial, arguing that he was denied effective assistance of counsel at trial, in violation of the Sixth Amendment to the United States Constitution and the Constitution of the State of Georgia. Finding no error, we affirm.

The record shows that following an overnight visit with her biological father, Dyer, in October 2005, the eight-year-old victim told her mother that Dyer rubbed lotion on her private area. The victim's mother did not contact the police, but the alleged abuse was subsequently reported to the Habersham County Department of Family and Children Services (the "Department") after the victim disclosed the incident at school. Katherine Abbott, a child protective service case manager with the Department, received the report and contacted Greg Bowen, an investigator with the Habersham County Sheriff's Office. Abbott and Bowen arranged for a forensic interview of the victim on November 10, 2005. The interview was videotaped and published to the jury during Dyer's trial.

During the interview, the victim disclosed that her father had taken her clothes off, had touched her vaginal area with his hand, and had touched her on the "inside." The victim further disclosed that the incident took place in her father's home. The victim drew a picture of herself in her father's home, which depicted the victim hiding behind a piece of furniture. When Abbott asked the victim

why she was hiding, the victim replied that she was afraid that her father would do to her what he had done to his sisters.

Near the end of the interview, when Abbott had asked the victim to tell her once more how her father had touched her, the victim disclosed that her father also had touched her with his tongue. After the forensic interview, Abbott learned that the Banks County Department of Family and Children Services had previously initiated an investigation of Dyer in 2003 after the victim alleged that Dyer had licked her vagina during a weekend visit. The investigation regarding this allegation was placed on inactive status after the victim failed to disclose any abuse during a forensic interview. In addition, the victim's mother had signed a statement indicating that the victim had made the allegation because she was mad at her father.

Prior to trial, the State filed a Notice of Similar Transaction Evidence requesting that it be allowed to introduce evidence relating to the victim's prior allegation of abuse in 2003. The trial court held that the prior transaction was admissible. Although the State's Notice did not refer to any other similar transactions, Dyer's trial counsel did not object to admission of the portion of the 2005 forensic interview in which the victim referred to what Dyer had done to his sisters.

Dyer's witness list, filed May 25, 2006, included Dyer's two sisters, Shalecia Wade and Paula Navarrete. Dyer's counsel had been unable to locate Navarrete prior to trial but finally spoke with her over the phone on Friday May 26, 2006, just days prior to trial. Navarrete told Dyer's counsel that she would not be a helpful witness, and Dyer's counsel did not subpoena her. Dyer's sisters were not included on the State's witness list.

Beginning with the State's first witness, Investigator Bowen, defense counsel opened the door to admission of evidence that Dyer had molested his sisters, seeking to show that such claim had been fabricated. On cross-examination, Dyer's counsel asked Bowen whether he had spoken with Dyer's sisters about the victim's claim that Dyer had also abused them. In response, Bowen testified that he had spoken with Navarrete but denied that he "confirmed through talking to [Navarrete] . . . that [Dyer] never abused her."[1]

Dyer's counsel again raised the allegations that Dyer had abused his sisters while cross-examining Abbott. Defense counsel asked Abbott if she had interviewed Dyer's sisters and whether she was concerned that the victim's statement about Dyer's sisters was a

---

[1] On redirect, Bowen testified that one of Dyer's sisters had told him something happened, but the trial court then sustained a hearsay objection raised by defense counsel.

fabrication. Abbott testified that she had spoken with Navarrete but not Wade. On redirect, Abbott testified that Navarrete had contacted her.[2]

During his cross-examination of the victim's mother, defense counsel asked her if she had told the victim about Dyer abusing his sisters, and the victim's mother replied that she thought the victim might have overheard her talking to Wade's ex-husband, Bobby Crawford, about the abuse. On redirect, the victim's mother was permitted to explain, over defense counsel's hearsay objection, that some time in early 2004, Crawford visited her and told her that Dyer had molested both of his sisters when they were younger.

Subsequently, the State moved for the production of both of Dyer's sisters as witnesses, and, at that time, Dyer's counsel advised the trial court that Wade was present but that he had not subpoenaed Navarrete. The trial court agreed to sign an order to bring Navarrete to court. On the second day of trial, Navarrete was brought to court and was given a subpoena to appear to testify the following morning. Navarrete, who was called as a rebuttal witness, testified that Dyer had molested her when she was a child.[3]

Dyer testified at trial, and on cross-examination, the prosecutor questioned Dyer regarding another incident of alleged molestation:

Q. Mr. Dyer, what is it that has never happened?
A. I have not molested my daughter in no way at all.
Q. At all?
A. That's correct.
Q. Anybody else?
A. No.
Q. No what?
A. No, I have not molested no one.
Q. You consider committing the act of sodomy on a fourteen-year-old child to be molesting someone?
MR. HENRY: Your Honor —
A. Best I can remember that was found not guilty by a jury.

At that point, Dyer's counsel objected to further questioning on this subject, and the trial court sustained the objection.

---

[2] The trial court again sustained defense counsel's hearsay objection and would not allow Abbott to report what Navarrete had told her. After the State moved for reconsideration, however, Abbott was permitted to testify that Navarrete had called her, that as a result, she gave Bowen Navarrete's telephone number, and that Bowen then talked to Navarrete.

[3] Navarrete also explained that she had called Abbott to tell her about the abuse and subsequently also spoke with Bowen.

Following his conviction, Dyer filed a motion for a new trial asserting the general grounds and ineffective assistance of counsel, which the trial court denied. This appeal followed.

1. Dyer argues that he received ineffective assistance of counsel because his trial counsel opened the door to evidence relating to allegations that he had abused his sisters. We disagree.

A criminal defendant asserting an ineffective assistance of counsel claim bears the burden of showing (1) that counsel's performance was deficient and (2) that the deficient performance prejudiced the defense by creating "a reasonable probability that but for counsel's errors, the outcome of the trial would have been different." (Citation omitted.) *Grier v. State*, 273 Ga. 363, 365 (4) (541 SE2d 369) (2001). We will uphold "a trial court's finding that a defendant has received effective assistance of counsel . . . unless [that finding is] clearly erroneous." (Citation omitted.) *Slade v. State*, 270 Ga. 305, 308 (2) (509 SE2d 618) (1998).

> To meet the first prong of the required test [for establishing ineffective assistance], the defendant must overcome the strong presumption that counsel's performance fell within a wide range of reasonable professional conduct, and that counsel's decisions were made in the exercise of reasonable professional judgment.

(Citation and punctuation omitted.) *Terry v. State*, 284 Ga. 119, 120 (2) (663 SE2d 704) (2008). "The reasonableness of counsel's conduct is examined from counsel's perspective at the time of trial and under the particular circumstances of the case." (Citation omitted.) Id. "As a general rule, matters of reasonable tactics and strategy, whether wise or unwise, do not amount to ineffective assistance of counsel." (Citation and punctuation omitted.) *Grier*, supra, 273 Ga. at 365 (4); see also *Godfrey v. State*, 274 Ga. App. 237, 239 (1) (a) (617 SE2d 213) (2005). "[M]atters of trial tactics, even if they appear in hindsight to be questionable, are grounds to find counsel ineffective only if the tactical decision is so patently unreasonable that no competent attorney would have chosen it." (Citations omitted.) *McKenzie v. State*, 284 Ga. 342, 347 (4) (b) (667 SE2d 43) (2008).

We find that the trial court did not clearly err in determining that trial counsel's decision to open the door to evidence concerning allegations that Dyer had molested his sisters did not amount to constitutionally deficient performance. At the motion for new trial hearing, Dyer's counsel testified that he did not attempt to exclude the portion of the victim's forensic interview in which the victim referred to what Dyer had done to his sisters because his strategy was to show "that it didn't happen and that the little girl was

making that stuff up through her mother and in the same [vein] she could have made up her allegation against her father." Dyer's trial counsel explained repeatedly that he questioned Bowen and other witnesses about Dyer's alleged abuse of his sisters for the same reason, namely, he wanted to prove that the victim's story was not true and that her mother was telling the victim what to say.

The trial transcript confirms that trial counsel attempted to use the allegations that Dyer had abused his sisters in an effort to impeach or discredit the victim. Dyer's mother and Wade testified on Dyer's behalf at trial and disputed the allegations that Dyer had abused his sisters. Wade also denied that she had ever told her ex-husband that Dyer had abused her. When Dyer took the stand, he denied that he had abused his sisters. Dyer further testified that he did not know why the victim would accuse him of abusing her unless her mother was putting her up to it, "[b]ecause if her mother would go as far as putting her up to telling this [tale] about me and my sisters, then her mother would put her [up to] telling anything."

Dyer's counsel was required to make a difficult choice about whether to pursue his chosen strategy after learning shortly before trial that Navarrete was a hostile witness. Dyer's counsel testified at the motion for new trial hearing that prior to speaking to Navarrete, he had uncovered no information leading him to believe that the allegations that Dyer had abused his sisters were true. We note also that at the time of Dyer's trial, Navarrete was estranged from her family as a result of a property dispute, and, for that reason, Dyer's counsel would have had at least some grounds for questioning Navarrete's motives. Dyer's counsel decided not to call Navarrete as a witness and did not expect her in court, given that she was not on the State's witness list. Under these circumstances, Dyer's counsel adhered to his strategy of allowing in and then attempting to discredit allegations that Dyer had abused his sisters.

In retrospect, trial counsel's decision may appear unwise, but "[p]articularly in regard to matters of trial strategy and tactic, effectiveness is not judged by hindsight or result." (Citation and punctuation omitted.) *Slade*, supra, 270 Ga. at 307 (2). Instead, we hold that trial counsel's strategic decision at the time of trial to open the door to evidence that Dyer had abused his sisters fell within the "wide range of reasonable professional conduct." (Citation and punctuation omitted.) *Terry*, supra, 284 Ga. at 120 (2); see also *Buice v. State*, 239 Ga. App. 52, 60 (6) (b) (520 SE2d 258) (1999) (tactical decision to introduce prior allegations of molestation and then refute them did not constitute ineffective assistance).

2. Dyer next contends that his trial counsel was ineffective in failing to move for a mistrial or request a curative instruction after

the State questioned Dyer about an act of sodomy on a 14-year-old.[4] At the motion for new trial hearing, Dyer's trial counsel admitted that he should have moved for a mistrial or requested curative instructions after the trial court sustained his objection to further questions on this subject and offered no strategic reason for failing to do so.

Even assuming Dyer's trial counsel was deficient in failing to move for a mistrial or request curative instructions, Dyer's ineffective assistance claim fails because he cannot show that there exists a "reasonable probability that but for counsel's errors, the outcome of the trial would have been different." (Citation omitted.) *Grier*, supra, 273 Ga. at 365 (4). When asked about committing sodomy on a 14-year-old, Dyer responded: "Best I can remember that was found not guilty by a jury." Because the trial court sustained Dyer's counsel's objection to any further questioning, the jury heard no evidence concerning the circumstances giving rise to the sodomy charge and, further, heard no evidence refuting or contradicting Dyer's testimony that he was acquitted of this charge.[5] Under these circumstances, we cannot find that Dyer suffered prejudice. See *Buice*, 239 Ga. App. at 58 (3) (any error resulting from State's cross-examination of witness about prior allegations that the defendant had molested her as a child was harmless, especially in light of fact that witness denied that she was molested).

For the reasons set forth above, we affirm the trial court's order denying Dyer's motion for a new trial.

*Judgment affirmed. Blackburn, P. J., and Ellington, J., concur.*

DECIDED JANUARY 12, 2009.

W. McCall Calhoun, Jr., Suzanne M. Boykin, for appellant.

Brian M. Rickman, District Attorney, Earnest J. McCollum, Assistant District Attorney, for appellee.

---

[4] The basis of the State's question regarding the sodomy allegation was that in 1992, Dyer's probation for a burglary conviction was revoked after the trial court found that Dyer had committed the offenses of burglary and sodomy. The trial court had twice ruled that pursuant to OCGA § 24-9-84.1 (b), Dyer's prior burglary conviction could not be used to impeach Dyer because the State did not provide advance written notice of its intent to use that conviction for impeachment.

[5] The record does not establish whether Dyer was in fact tried on the sodomy charge and acquitted. At the new trial hearing, Dyer's counsel testified that he still did not know whether Dyer's testimony was truthful.