**SECOND DIVISION**
**BARNES, P. J.,**
**BOGGS and RICKMAN, JJ.**

**NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules**

**April 27, 2016**

# In the Court of Appeals of Georgia

A16A0142. CAMPBELL v. THE STATE.

BARNES, Presiding Judge.

An Athens-Clarke County jury found Kenyatta Latroy Campbell guilty of trafficking in marijuana, and the trial court denied his motion for new trial. On appeal, Campbell contends that the trial court erred in denying his motion to suppress evidence obtained by the police from his cell phone and that he was denied the effective assistance of counsel at trial. For the reasons discussed below, we affirm.

1. We apply the following principles in reviewing the denial of Campbell's motion to suppress:

> When the facts material to a motion to suppress are disputed, it generally is for the trial judge to resolve those disputes and determine the material facts. This principle is a settled one, and this Court has identified three corollaries of the principle, which limit the scope of review in appeals from a grant or denial of a motion to suppress in which the trial court has made express findings of disputed facts. First, an appellate court generally must accept those findings unless they are clearly erroneous.

Second, an appellate court must construe the evidentiary record in the light most favorable to the factual findings and judgment of the trial court. And third, an appellate court generally must limit its consideration of the disputed facts to those expressly found by the trial court.

(Citations and footnotes omitted.) *Hughes v. State*, 296 Ga. 744, 746 (1) (770 SE2d 636) (2015). As part of our review, "we may consider trial testimony in addition to the testimony submitted during the motion to suppress hearing." (Footnote omitted.) *Green v. State*, 282 Ga. App. 5, 5 (637 SE2d 498) (2006). Guided by these principles, we turn to the record in the present case.

On the evening of December 19, 2011, officers with the Athens-Clarke County Police Department executed a search warrant on the house where Dennis Brown lived with his girlfriend and children. The officers discovered almost 200 pounds of marijuana stored throughout the house. The marijuana had a street value of approximately $200,000.

Marijuana found in Brown's bedroom closet was in the process of being broken down into smaller quantities for sale. The closet contained a garbage bag with marijuana in it, "digital scales, different quantities of marijuana broke[n] down on the shelf, [and] sandwich bags used to package."

The marijuana stored throughout the rest of the house was in bale form and wrapped in layers of plastic wrap, axle grease, and fabric softener. According to a police sergeant involved in executing the search warrant, this unique form of packaging is commonly used in Arizona and other western states in an effort to mask the odor of the drugs. In the bathroom, there was a bale of the uniquely packaged marijuana in a large duffle bag. Duffle bags of the same size and brand were found throughout the house.

Brown was present during the search, and officers detained him and confiscated his cell phone. After he was Mirandized, Brown agreed to be interviewed and told the police sergeant that his girlfriend had nothing to do with the marijuana and that he was responsible for it. Brown admitted that the marijuana in his bedroom closet was his own, but said that he was storing the bales of marijuana that were scattered around the rest of the house for someone else. Brown was hesitant to provide that person's name and stated that he was worried for his own safety. The sergeant was already familiar with Campbell as the potential source of Brown's drug supply based on information that had been provided to him by other detectives, and

he asked Brown if Campbell was his drug supplier. Brown nodded his head in the affirmative but did not want to say Campbell's name out loud.

During Brown's interview, the police sergeant noticed that Brown's cell phone kept receiving incoming text messages and phone calls from the same contact, "Head." The last text message from "Head" asked, "Where u at?" Around the same time, Campbell drove up to Brown's house. Officers informed the sergeant that someone was outside in the driveway, and the sergeant paused his interview with Brown and went outside to see who was there. The sergeant recognized Campbell, who was standing beside his car in the driveway with a cell phone in his hand, and detained him. The sergeant took Campbell's cell phone, which was a "flip phone," and determined that the telephone number of the phone matched the number of the contact identified as "Head" on Brown's phone.

Shortly thereafter, the police sergeant continued his interview with Brown. When he informed Brown that Campbell had been detained in the driveway, Brown appeared surprised. Brown confirmed that "Head" was Campbell and that he was the source of the marijuana in the house.

4

Later that night, around 2:00 a.m., officers obtained a search warrant for the house where Campbell lived.[1] Upon executing the warrant, officers discovered marijuana residue and seized three duffel bags. The duffel bags found in Campbell's house were identical to the duffle bags that had been discovered at Brown's house.

As part of their investigation, the police downloaded from Brown's cell phone all of the text messages between Brown and the contact "Head." According to Brown, many of the text messages were in code to avoid police detection and concerned the delivery of the marijuana to his house.

Further investigation revealed that Campbell had been arrested after attempting to purchase a large shipment of marijuana in Tucson, Arizona, in April 2011 but was out on bond by the time of the search of Brown's house. According to undercover narcotics agents involved in the April 2011 incident, Campbell had attempted to purchase 490 pounds of marijuana for $235,000. Brown later testified that Arizona was the source of Campbell's marijuana, and Brown and his girlfriend both testified that they had seen Campbell driving vehicles with Arizona tags when he delivered

---

[1] The police also conducted a warrantless search of Campbell's car parked at Brown's house. A K-9 unit dog alerted on Campbell's car for the presence of the odor of narcotics, but the police did not find any drugs inside the car.

marijuana to their house. Additionally, the police saw a car with an Arizona tag parked in Campbell's driveway when they executed the search warrant at his house.

Based on the marijuana seized from Brown's house, Campbell and Brown were charged with trafficking in marijuana. Campbell moved to suppress any evidence obtained from his cell phone, arguing that the police should have obtained a search warrant. Following an evidentiary hearing, the trial court denied the motion, concluding that the warrantless seizure and search of Campbell's cell phone was constitutional.

Brown agreed to plead guilty and testified at Campbell's trial, identifying Campbell as the source of the marijuana. After receiving all the evidence, including the testimony of Brown, his girlfriend, and the various law enforcement officers involved in the instant case and the Arizona case, as well as similar transaction evidence of Campbell's prior involvement in marijuana distribution, the jury found Campbell guilty of the charged offense. Campbell then filed a motion for new trial, which the trial court denied, resulting in this appeal.

On appeal, Campbell contends that the trial court erred in denying his motion to suppress the evidence obtained by the police from his cell phone. Relying upon

6

*Riley v. California*, __ U.S. __ (134 SCt 2473, 189 LE2d 430) (2014),[2] Campbell argues that the officers were required to obtain a search warrant before seizing and searching his phone.

In *Riley*, the United States Supreme Court held that a search warrant generally is required before police officers may search a suspect's cell phone, even when the phone is seized incident to arrest.[3] 134 SCt at 2493 (IV). Here, the police sergeant seized Campbell's cell phone and opened it to determine whether the phone number of the cell phone matched the number of the caller identified as "Head" on Brown's phone.[4] Campbell argues that *Riley* required the police to obtain a search warrant for his cell phone before seizing the phone and searching it to determine the phone number, while the State argues that the brief examination of a cell phone to determine the phone number is distinguishable from *Riley* and should not require a warrant.

---

[2] *Riley* was decided after the trial court heard Campbell's motion to suppress and denied it.

[3] The Supreme Court did note that "even though the search incident to arrest exception does not apply to cell phones, other case-specific exceptions may still justify a warrantless search of a particular phone," such as the exigent circumstances exception to the warrant requirement. *Riley*, 134 SCt at 2494 (IV).

[4] It is unclear from the record whether the police sergeant simply flipped open Campbell's cell phone and looked at the screen or opened files in the phone to determine the telephone number.

Pretermitting whether *Riley* required the police to obtain a search warrant for Campbell's cell phone, we conclude that any error by the trial court in denying Campbell's motion to suppress the contents of his phone was harmless. See generally *Ashe v. State*, 285 Ga. 359, 361 (2) (676 SE2d 194) (2009) ("[T]o be successful, an enumeration of error requires a showing of both harm and error."). At trial, the State introduced printouts of the inculpatory text messages from the contact "Head" that had been extracted by the police from Brown's cell phone. The printouts also listed the phone number found in Brown's phone associated with the contact "Head."

The only evidence obtained from Campbell's cell phone that was introduced at trial was the telephone number of his phone, which matched the number for "Head" in Brown's phone. The evidence of the phone number from Campbell's cell phone thus was used by the State to show that he was the contact nicknamed "Head" in Brown's phone that had sent text messages regarding the delivery of the marijuana.

Significantly, however, the State presented other properly admitted evidence showing that Campbell was the contact nicknamed "Head" in Brown's phone. Both Brown and his girlfriend testified that "Head" was Campbell's nickname. Additionally, a police investigator assigned to the Northeast Georgia Regional Drug

8

Task Force who had participated in the execution of the search warrant at Brown's house testified that she was familiar with Campbell and that he went by the nickname "Head." Moreover, the evidence showed that Campbell arrived at Brown's house with his cell phone in hand around the same time that "Head" texted Brown, "Where u at?" The information obtained from Campbell's phone was cumulative of this testimony and evidence. Accordingly, even if the phone number of Campbell's phone was acquired as the result of an unlawful search and seizure, we affirm the trial court's denial of Campbell's motion to suppress because any error in that ruling was harmless beyond a reasonable doubt. See *Sims v. State*, 297 Ga. 401, 403 (2) (774 SE2d 620) (2015) (denial of motion to suppress videotape was harmless because cumulative of other properly admitted evidence); *Green v. State*, 187 Ga. App. 373, 374 (1) (370 SE2d 348) (1988) (denial of motion to suppress was harmless, where evidence that was seized as a result of the search was cumulative of other properly admitted evidence).

2. Campbell contends that his trial counsel rendered ineffective assistance by recalling Brown as a witness to question him about comments that he purportedly made about Campbell on his Facebook page that were posted after his initial trial

9

testimony. We disagree because Campbell has failed to establish that the performance of his trial counsel was deficient.

To succeed on his ineffective claim under the test established in *Strickland v. Washington*, 466 U.S. 668, 687 (III) (104 SCt 2052, 80 LE2d 674) (1984), Campbell must demonstrate that his "counsel's performance was deficient and that, but for that deficient performance, there is a reasonable probability that the outcome of his trial would have been different." (Footnote omitted.) *Jackson v. State*, 309 Ga. App. 450, 452 (2) (710 SE2d 649) (2011). If Campbell fails to prove either the deficiency or prejudice prong of the test for ineffective assistance, his claim fails. *Russell v. State*, 322 Ga. App. 553, 556 (3) (b) (745 SE2d 774) (2013).

> To meet the first prong of the required test for establishing ineffective assistance, the defendant must overcome the strong presumption that counsel's performance fell within a wide range of reasonable professional conduct, and that counsel's decisions were made in the exercise of reasonable professional judgment. The reasonableness of counsel's conduct is examined from counsel's perspective at the time of trial and under the particular circumstances of the case. As a general rule, matters of reasonable tactics and strategy, whether wise or unwise, do not amount to ineffective assistance of counsel. Matters of trial tactics, even if they appear in hindsight to be questionable, are grounds

10

to find counsel ineffective only if the tactical decision is so patently unreasonable that no competent attorney would have chosen it.

(Citations and punctuation omitted.) *Dyer v. State*, 295 Ga. App. 495, 498 (1) (672 SE2d 462) (2009).

The record reflects that Brown testified during the State's case-in-chief, but defense counsel later recalled Brown as a witness for further cross-examination. After recalling Brown to the witness stand, defense counsel introduced into evidence comments about Campbell that Brown had purportedly posted to his Facebook page after he testified in the State's case-in-chief, and counsel questioned Brown about those comments. In the comments, Brown berated those who criticized him for testifying on behalf of the State, accused Campbell of not taking responsibility for his conduct, and suggested at one point that Campbell had been involved with another drug dealer who was being prosecuted for the murder of a police officer and other crimes. Subsequently, during closing argument, defense counsel argued that the comments on the Facebook page were a "long rambling diatribe" that showed that Brown was "ranting, raving, [and] angry" about being caught and was "going to blame everyone else" for his troubles, and more generally that Brown had a pattern

11

of "lying about everything he thinks can help himself and somehow or other make himself look better."

At the hearing on the motion for new trial, defense counsel testified that his trial strategy had been to discredit Brown, the State's key witness. Defense counsel testified that he had made the strategic decision to recall Brown as a witness and show that he was making additional comments about Campbell on social media that were slanderous. Defense counsel admitted that "in retrospect" it was probably a "poor decision" to recall Brown and cross-examine him about the social media comments.

Decisions on which witnesses to call and how to conduct cross-examination are matters of trial strategy. *Bolick v. State*, 244 Ga. App. 567, 569 (1) (a) (536 SE2d 242) (2000). Here, defense counsel clearly made a tactical decision to introduce evidence of additional accusations that Brown had made against Campbell on social media with the intention of dispelling those accusations, which, if successful, would have potentially discredited Brown by illustrating that he would fabricate all sorts of allegations in an effort to shift the blame to Campbell and put himself in a better light.

12

"In retrospect, [defense] counsel's decision may appear unwise, but particularly in regard to matters of trial strategy and tactic, effectiveness is not judged by hindsight or result." (Citation and punctuation omitted.) *Dyer*, 295 Ga. App. at 499 (1). Instead, we hold that defense counsel's strategic decision to recall Brown and cross-examine him about the Facebook posts fell within the wide range of professional conduct. See id. (holding that tactical decision by defense counsel to bring up additional, uncharged allegations of abuse and then attempt to show that they were fabricated as part of an effort to further discredit the victim fell within the wide range of professional conduct); *Buice v. State*, 239 Ga. App. 52, 60 (6) (b) (520 SE2d 258) (1999) (strategic decision to introduce prior molestation allegations and then attempt to refute them fell within the wide range of professional conduct). Accordingly, Campbell has failed to show that his trial court was deficient, and thus cannot succeed on his ineffective assistance claim.

*Judgment affirmed. Boggs and Rickman, JJ., concur*.