A05A1725. TUCKER v. THE STATE.
(622 SE2d 466)

MIKELL, Judge.

Steven Douglas Tucker appeals his convictions of trafficking in methamphetamine, possession of methamphetamine, possession with intent to distribute methamphetamine, possession with intent to use drug related objects, and possession of marijuana in an amount less than one ounce.[1] He challenges the sufficiency of the evidence, and contends that the trial court erred by admitting an incriminating

---

[1] Tucker also was convicted of possession of a firearm by a convicted felon, but the state nolle prossed that charge.

statement he made to the police while in custody without *Miranda* warnings. For reasons which follow, we affirm.

Viewed in the light most favorable to the verdict, the evidence shows that on December 9, 2002, Tucker was at the rental home of Trena Mae Burton, his girlfriend and co-defendant,[2] when officers of the Dalton Police Department's Situational Response Unit, including Officer Alan Woods, Detective Jesse Carter, and Sergeant Cliff Cason, executed a search warrant at the residence. Carter testified that he discovered Burton lying naked on the bed in the bedroom and found drug paraphernalia, including a blow torch and spoon, on the dresser. Carter also noticed a white powdery substance on the dresser.

According to Woods, Tucker was sitting in a chair eating pecan pie when officers arrived. Woods handcuffed Tucker and detained him in the living room. Woods testified that he found drugs, plastic bags and a scale on the coffee table, and marijuana in an end table. Woods and Cason then heard Tucker say, " '[i]f you'll get [Burton] some sweat pants, I'll tell you where the dope's at.' " Tucker then said, it is "within six feet of where you were standing." Woods and Officer Mike Bowen discovered 75.41 grams of methamphetamine in rock form in a tray in a computer desk six feet from where Tucker was standing. Officers also recovered a small bag containing 20.66 grams of methamphetamine, and a smoking pipe and gun in Tucker's truck.

Burton testified that she and Tucker had been dating for over one year, that he claimed to live at her residence, and that he owned the truck parked in her driveway. Burton testified that she and Tucker regularly used methamphetamine and sold it from the residence. She also testified that Tucker had placed the methamphetamine rock in the computer desk.

Tucker denied bringing any of the drug related items into Burton's home, and denied any knowledge of the 75.41 grams of methamphetamine. He also denied selling drugs from Burton's home or owning the truck in her driveway, but admitted using methamphetamine. Tucker testified that Burton used methamphetamine, and that she was involved in "the drug trade." He denied making the statement attributed to him by Woods and Cason.

1. Tucker claims that there was insufficient evidence to prove that the contraband belonged to him. Though not specifically stated, Tucker appears to argue that the evidence is insufficient to support his conviction because Burton had equal access to the contraband.

"[M]erely finding contraband on premises occupied by a defendant is not sufficient to support a conviction if it affirmatively

---

[2] Burton pled guilty and was sentenced to serve two years in confinement and eight years on probation.

appears from the evidence that persons other than the defendant had equal opportunity to commit the crime."[3] Even though Tucker did not own the home and was not arrested with drugs or drug related objects on his person, there was sufficient evidence to link Tucker to the contraband. First, Burton testified that Tucker frequently slept at her home and even claimed to live there; that she had smoked methamphetamine with him; that he had brought the contraband into her home; that he had placed the rock of methamphetamine in the computer desk drawer; that he had sold methamphetamine from her home; and that the truck in her driveway belonged to him. Second, officers recovered a pipe from Tucker's truck. Third, Tucker told officers where they could find the drugs.

Although there was conflicting evidence presented by Tucker regarding his involvement with the contraband, "it is the function of the jury, not the appellate court, to resolve conflicts in the testimony and determine the credibility of the witnesses."[4] The evidence supported the verdict.

2. Tucker contends that the trial court erred in admitting his statement concerning the location of the drugs because at the time he was in custody and had not been given *Miranda* warnings. Tucker's contention is meritless.

"Contrary to [Tucker's] argument, *Miranda* warnings are not a prerequisite to the admission of evidence concerning voluntary statements not made in response to any form of custodial interrogation."[5] "Voluntary, spontaneous admissions made by a defendant prior to any interrogation are admissible at trial."[6] At the *Jackson-Denno* hearing, Cason, the commanding officer on the scene, testified that when he entered the residence Tucker already was handcuffed. In the kitchen, Cason asked Tucker to identify his supplier and point out the location of drugs in the residence. When Tucker refused, Cason brought him into the living room and sat him down in a chair. Cason testified that, "at that point all of my conversations with him were concluded." As Cason was directing other officers to remove Burton from the residence and place her in a patrol car, he heard Tucker say that he "would show where the drugs were if we would get her some

---

[3] (Punctuation and footnote omitted.) *Bryan v. State*, 271 Ga. App. 60, 62 (1) (608 SE2d 648) (2004).

[4] (Citation and punctuation omitted.) *Lester v. State*, 226 Ga. App. 373, 378 (4) (487 SE2d 25) (1997).

[5] (Punctuation and footnote omitted.) *Gresham v. State*, 255 Ga. App. 625, 629 (3) (566 SE2d 380) (2002). See *Miranda v. Arizona*, 384 U. S. 436, 478 (III) (86 SC 1602, 16 LE2d 694) (1966) ("Volunteered statements of any kind are not barred by the Fifth Amendment.").

[6] *Jenkins v. State*, 219 Ga. App. 339, 341 (1) (465 SE2d 296) (1995), citing *Smith v. State*, 264 Ga. 857, 859 (3) (452 SE2d 494) (1995).

sweat pants." Tucker then stated that "the drugs were within six feet of where we were standing."

Carter testified that he heard Tucker say something about getting sweat pants for Burton, but he did not hear Tucker say anything about the drugs being six feet from where the officers were standing.

The state conceded that Tucker was in custody. The court found credible Cason's testimony that he had finished questioning Tucker, and concluded that Tucker's statement was voluntary and not the result of custodial interrogation.

The trial court's finding was not clearly erroneous.[7] Tucker's spontaneous and voluntary statement resulted from his concern for Burton and not from any custodial interrogation by Cason.

*Judgment affirmed. Andrews, P. J., and Phipps, J., concur.*

DECIDED OCTOBER 26, 2005.

*Avrett, Ponder & Withrock, William B. Barnwell*, for appellant.
*Kermit N. McManus, District Attorney, Mark P. Higgins, Jr., Assistant District Attorney*, for appellee.

---

[7] See *Williams v. State*, 261 Ga. App. 410, 415 (5) (582 SE2d 556) (2003); *Gresham*, supra.
[1] See *Parks v. State*, 248 Ga. App. 405, 406 (2) (544 SE2d 536) (2001).