## A09A0880. JARRETT v. THE STATE.

(683 SE2d 116)

MIKELL, Judge.

Marvin Jarrett ("Jarrett") and his brother, Earnest Jarrett ("Earnest"), were jointly indicted for possession of cocaine with intent to distribute (Count 1), possession of marijuana with intent to distribute (Count 2), possession of marijuana (Count 3), four counts of theft by receiving stolen property (Counts 4, 6, 8, and 9), two counts of possession of a motor vehicle with vehicle identification number ("VIN") removed (Counts 5 and 7), theft by receiving property stolen in another state (Count 10), and four counts of criminal use of article with altered identification mark (Counts 11, 12, 13, and 14). In 2007, a jury found Jarrett guilty of Counts 5 and 7, and not guilty of all other counts. The trial court sentenced Jarrett to 20 years with 15 to serve. On appeal, Jarrett contends that the trial court erred in denying his amended motion for new trial on several grounds. We affirm.

Viewed in the light most favorable to the verdict, the record reflects that on March 4, 2005, Joseph Scott's dark blue 1988 Oldsmobile Cutlass with a silver top and VIN 1G3GR11Y7JP317703 was stolen from the Firehouse Nightclub in Columbus. Four months later, on July 7, 2005, Shirley Edward Gooch's black and silver 1986 Chevrolet El Camino with VIN 3GCCW80H8GS907081 was stolen in LaGrange. On April 9, 2006, John Robert Harman returned to his home in Pine Mountain and discovered that several items were missing, including a Sony PlayStation 2, a DVD player, and a hunting rifle. Investigator Anthony Knotts of the Harris County Sheriff's Office was assigned to investigate the burglary.

Several days into the investigation, Harman's nephew Michael Harman confessed to Knotts that he committed the burglary, and claimed that he took the stolen items to a trailer at 1680 Flint Hill Highway and traded them for drugs. At trial, Michael Harman identified Jarrett as the man who gave him the drugs, but later

testified he was not sure whether he got the drugs from Jarrett or Earnest. After Michael Harman identified the trailer, Knotts obtained a search warrant. In the ensuing search of the home, officers discovered electronics with serial numbers removed, including the stolen PlayStation and DVD player, as well as illegal drugs and drug paraphernalia, a set of four brand new tires, stored in a bedroom, and a box of mail with Jarrett's name on it. Earnest, who was alone outside the trailer, was arrested. Outside the home, officers discovered two vehicles registered to Jarrett, a silver 1983 Cutlass Oldsmobile with VIN 1G3AR47A2DM449209, and a 1978 El Camino with VIN 1W80M8D436719. Knotts testified that there was silver spray paint around the edge of the tag removed from the Cutlass. Inside the vehicles, officers discovered insurance cards in Jarrett's name, as well as a bill of sale to Jarrett for the purchase of a 1978 El Camino with VIN 1W80M8D436719 from Pete's Salvage in Tifton on February 11, 2005, and a bill of sale to Jarrett for the purchase of a 1981 Oldsmobile Cutlass with VIN 1G3AR47A2DM449209 from Lakeesha Holmes, on January 6, 2004. The following day, officers discovered that the vehicles had been stolen. Knotts testified that the true VIN for the Oldsmobile Cutlass was 1G3GR11Y7JP317703, and that the true VIN for the Chevrolet El Camino was 3GCCW80H8GS907081. Knotts further testified that when he ran the altered VIN on the stolen El Camino it came back as assigned to a 1978 white El Camino registered to Jarrett. When he ran the altered VIN on the Oldsmobile Cutlass it came back as assigned to a blue 1983 Oldsmobile Supreme Coupe, registered to Jarrett. Knotts further testified that in May 2004, he had occasion to run a vehicle tag, which was issued to Jarrett for a blue 1983 Oldsmobile Cutlass Supreme Coupe with a VIN identical to the VIN on the Oldsmobile Cutlass officers recovered at 1680 Flint Hill Highway.

Lieutenant Sven Armbrust of the Harris County Sheriff's Office testified that he examined the underside of both the El Camino and the Oldsmobile Cutlass and that the VINs on the transmission plates corresponded to the VINs provided by Scott and Gooch for their stolen vehicles.

At trial, Scott and Gooch positively identified the vehicles recovered as theirs through several of the car's distinctive marks and features. According to Gooch, the vehicle had been sanded down from its original color and painted with a prime coat; the dashboard was damaged where the VIN had been changed; the windshield was broken; and the wheels and tires had been removed and placed on an Oldsmobile Cutlass sitting beside his vehicle in the impound lot. Scott testified that the steering wheel and locks on his vehicle had been changed; that the wheels and hubcaps had been changed; that the VIN had been changed; and that the vehicle had been painted

silver, but that areas of original blue paint were still visible on the door handles. Scott further testified that he recognized his vehicle because there was a "piece [of the vehicle] sticking out" which he had tried unsuccessfully to fix by drilling a hole in it.

1. Jarrett contends that Count 7 of the indictment is void because it failed to charge him with guilty knowledge. Jarrett has waived this claim.

"If the [indictment was] void *for any reason*, the question should have been raised by demurrer before pleading to the merits, or by motion in arrest of judgment after conviction."[1] In this case, Jarrett did not file either a demurrer or a motion in arrest of judgment, nor did he even raise the issue in his motion for new trial. "We may consider only issues properly raised in lower courts. In this instance, the issue which [Jarrett argues] was not properly raised in the trial court."[2] It follows that "[Jarrett's enumeration] of error predicated upon the purported voidness of [Count 7] of the [indictment presents] nothing for review."[3]

2. Jarrett contends that the trial court erred in denying his motion for directed verdict on Counts 5 and 7 because there was insufficient evidence that he knew the numbers on the subject vehicles had been removed. We disagree.

We review the denial of a motion for directed verdict of acquittal under the reasonable doubt test enunciated in *Jackson v. Virginia*:[4]

> On appeal, the defendant no longer enjoys the presumption of innocence; moreover, an appellate court does not weigh the evidence or determine the credibility of witnesses, but only determines whether the evidence is sufficient for a rational trier of fact to find the defendant guilty beyond a reasonable doubt. In addition, conflicts in the witnesses' testimony are a matter for a jury to resolve. As long as there is some competent evidence, even though contradicted, on

---

[1] (Punctuation omitted; emphasis in original.) *Abreu v. State*, 206 Ga. App. 361, 363 (2) (425 SE2d 331) (1992), citing *Rucker v. State*, 114 Ga. 13, 14 (39 SE 902) (1901).

[2] (Citation and punctuation omitted.) *Abreu*, supra.

[3] Id. Jarrett seeks to invoke the "plain error" doctrine here. "Under the 'plain error' doctrine, we will consider issues not properly raised and ruled upon in the trial court when the alleged error is so clearly erroneous as to result in a likelihood of a grave miscarriage of justice or which seriously affects the fairness, integrity or public reputation of a judicial proceeding." (Punctuation and footnote omitted.) *Cochran v. State*, 277 Ga. App. 251, 255 (2) (626 SE2d 217) (2006). The "plain error" doctrine, however, is limited to capital cases and to criminal cases in which the trial judge allegedly intimates an opinion of the defendant's guilt, in violation of OCGA § 17-8-57. Id.

[4] 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

each element necessary to prove the [s]tate's case, the jury's verdict will be upheld.[5]

OCGA § 16-8-83 (c) (1) provides that "[a]ny person who . . . possesses a motor vehicle . . . with knowledge that the vehicle identification number of the motor vehicle . . . has been altered, counterfeited, defaced, destroyed, disguised, falsified, forged, obliterated, or removed shall be guilty of a felony." The crux of the offense is guilty knowledge of the alteration or removal of the VIN, which may be proved by circumstantial evidence.[6] In this case, the jury was authorized to find from the evidence that Jarrett knowingly possessed two vehicles with altered or removed VINs. Jarrett purchased a 1978 El Camino on February 11, 2005, and a 1981 Oldsmobile Cutlass on January 6, 2004, months before Scott and Gooch reported their vehicles stolen.[7] When recovered, the stolen vehicles had altered VINs, identical to the VINs on two vehicles purchased by Jarrett before March 4, 2005, and July 2, 2005; they had been repainted and altered from their original conditions; and the dashboard of the El Camino was damaged where the VIN had been changed. Further, there was evidence that in 2004, Jarrett used the same VIN discovered on Scott's stolen 1988 Oldsmobile Cutlass on a 1983 Oldsmobile Cutlass. "The circumstances, the time, the secrecy, all the transactions before, at the time and afterwards, may be brought to bear upon what was the knowledge of the [possessor]."[8] Here there was sufficient evidence for the jury to infer that Jarrett possessed the stolen vehicles with knowledge that the true VINs had been removed.

3. In his next enumeration of error, Jarrett contends that the evidence is insufficient to support his convictions because there is no evidence that the VINs on the stolen vehicles were not the proper VINs. This enumeration is meritless.

At trial, both Scott and Gooch reported to police the VINs from their stolen vehicles and then positively identified the vehicles recovered — and registered to Jarrett — as theirs through several of the cars' distinctive marks and features. Gooch testified that the dashboard was damaged where the VIN had been removed, and the state introduced evidence showing that the alternate VINs on the transmission plates of the stolen vehicles did not match the VINs on

[5] (Citation omitted.) *Hubbard v. State*, 239 Ga. App. 632, 634 (2) (521 SE2d 678) (1999).

[6] *McJunkin v. State*, 160 Ga. App. 30, 32 (2) (285 SE2d 756) (1981); *Dooley v. State*, 145 Ga. App. 539 (2) (244 SE2d 55) (1978).

[7] To the extent Jarrett disputes the bills of sale introduced by the state at trial, such argument is waived by Jarrett's failure to object to this evidence at trial.

[8] (Citation and punctuation omitted.) *McJunkin*, supra.

the windshields of the vehicles, but matched the VINs reported by Scott and Gooch. Thus, the jury could reasonably infer that the VINs on the windshields had been altered or removed.

4. Jarrett contends that a fatal variance existed between the indictment and the proof at trial. We disagree.

In *Delacruz v. State*,[9] our Supreme Court held that

[o]ur courts no longer employ an overly technical application of the fatal variance rule, focusing instead on materiality. The true inquiry, therefore, is not whether there has been a variance in proof, but whether there has been such a variance as to affect the substantial rights of the accused. It is the underlying reasons for the rule which must be served: (1) the allegations must definitely inform the accused as to the charges against him so as to enable him to present his defense and not to be taken by surprise, and (2) the allegations must be adequate to protect the accused against another prosecution for the same offense. Only if the allegations fail to meet these tests is the variance fatal.[10]

Here, Counts 5 and 7 of the indictment against Jarrett alleged that he "did unlawfully possess a motor vehicle . . . from which the vehicle identification number had been removed, altered and defaced."[11] Jarrett contends the state failed to prove an alteration of the VINs by any method set forth in OCGA § 16-8-83 (c) (1), let alone by removal. On the contrary, the evidence recited above was more than sufficient for the jury to infer that the original VINs on the stolen vehicles registered to Jarrett were removed and replaced with false VINs.

5. In his next enumeration of error, Jarrett contends that the trial court improperly instructed the jury on possession of a motor vehicle with vehicle identification number removed. The trial court charged the jury as follows:

A person commits the offense of possession of a motor vehicle with vehicle identification removed when the person or persons possess a motor vehicle with knowledge that the vehicle identification number of the motor vehicle has been altered, defaced or removed.

Jarrett argues that this charge was erroneous because the methods

---

[9] 280 Ga. 392 (627 SE2d 579) (2006).

[10] (Citation omitted.) Id. at 396 (3).

[11] Count 5 included the word "knowingly" as well. See Division 1, supra.

of violating OCGA § 16-8-83 (c) (1) are mutually exclusive. Contrary to Jarrett's assertion, the charge is a correct statement of the law and is virtually identical to the language of the statute. Thus, this enumerated error fails.

6. Jarrett contends that there was a fatal variance between the trial court's charge on possession of a motor vehicle with vehicle identification number removed and the language of Count 5 of the indictment. We disagree.

Count 5 of the indictment charged Jarrett with possession of a motor vehicle with vehicle identification number removed "in that the said accused . . . did unlawfully and knowingly possess a motor vehicle, to wit: a 1986 Chevrolet El Camino, from which the vehicle identification number had been removed, altered and defaced." Jarrett contends that the jury instruction was erroneous because it used the conjunction "or" instead of "and" as charged in the indictment. "[W]here a person is charged in an indictment with a crime in two ways by using the conjunctive 'and' but where the statute contains 'or[,]' if it is proven that the defendant violated the statute in either way he may be convicted."[12] There was no fatal variance between the court's charge and the indictment. Moreover, contrary to Jarrett's assertion, there was sufficient evidence that the stolen vehicle registered to Jarrett and insured in his name had a false VIN when it was recovered. It necessarily follows that the original VIN was *removed* from the vehicle in order to conceal its true identity.

7. In his remaining enumerations of error, Jarrett contends that his trial counsel rendered ineffective assistance.

> In order to prove his claim of ineffective assistance of counsel, [Jarrett] must establish both prongs of the test set out in *Strickland v. Washington*:[13] (1) that his trial counsel's performance was deficient and (2) that counsel's inadequate performance so prejudiced his defense that a reasonable probability exists that the result of the trial would have been different but for that deficiency.[14]

"A reasonable probability is a probability sufficient to undermine confidence in the outcome."[15] Failure to satisfy either prong of the

---

[12] (Citation and punctuation omitted.) *Adams v. State*, 229 Ga. App. 381, 384 (4) (494 SE2d 92) (1997).

[13] 466 U. S. 668, 695-696 (III) (B) (104 SC 2052, 80 LE2d 674) (1984).

[14] (Footnote omitted.) *Thomas v. State*, 291 Ga. App. 795, 804 (6) (662 SE2d 849) (2008).

[15] *Strickland*, supra at 694 (III) (B). See also *Miller v. State*, 285 Ga. 285 (676 SE2d 173) (2009).

two-part *Strickland* test is fatal to an ineffective assistance claim.[16] "[A] trial court's finding that a defendant has been afforded effective assistance of counsel will be affirmed on appeal unless clearly erroneous."[17] We conduct a de novo review of the lower court's legal conclusions.[18]

(a) Jarrett contends his trial counsel was ineffective in failing to request a jury charge on knowledge. Regardless of whether counsel requested the charge, the record clearly reflects that the trial court gave the pattern charge on knowledge when giving the standard charges applicable to all criminal cases.[19] Accordingly, this enumeration is meritless.

(b) Jarrett next contends that counsel performed deficiently by failing to move for a mistrial or object to testimony from Investigator Knotts that he knew Jarrett from "prior dealings."[20] Knotts then went on to explain that in May 2004, while he was "attached to DEA in Columbus," he had occasion to run a vehicle tag which came back registered to Jarrett for a blue 1983 Oldsmobile Cutlass Supreme Coupe with a VIN identical to the VIN on Scott's Oldsmobile Cutlass when it was recovered by police. Jarrett contends that counsel's failure to object to this testimony was prejudicial because the testimony "covertly" suggested to the jury that he was a "known drug dealer in Pine Mountain and[,] as such, was likely now selling drugs in Talbot County."

"Generally, the character of the parties is irrelevant and no evidence of a criminal defendant's general bad character or prior convictions shall be admissible unless and until the defendant shall have first put his character in issue."[21] However, "[t]estimony that a defendant is known to the police does not impermissibly place the defendant's character into issue."[22] Such is the case here. Regardless, Jarrett's claim of prejudice fails since the jury acquitted him of all drug-related charges.[23]

(c) Arguing that the underlying affidavit was not founded on probable cause because it was based on Knotts's untruthful statements, Jarrett contends that his trial counsel performed deficiently by failing to move to suppress the search warrant.

---

[16] *Thomas*, supra.

[17] (Footnote omitted.) *White v. State*, 293 Ga. App. 241, 242 (1) (666 SE2d 618) (2008).

[18] *Robbins v. State*, 290 Ga. App. 323, 329 (4) (659 SE2d 628) (2008).

[19] Suggested Pattern Jury Instructions, Vol. II: Criminal Cases, § 1.43.10 (2007).

[20] The trial court granted a mistrial in a previous trial when Knotts stated that he knew Jarrett because he dealt drugs in Pine Mountain.

[21] (Citation and punctuation omitted.) *Bozzuto v. State*, 276 Ga. App. 614, 618 (2) (624 SE2d 166) (2005).

[22] (Footnote omitted.) *Sanders v. State*, 245 Ga. App. 701, 702 (3) (538 SE2d 772) (2000).

[23] See *Garrison v. State*, 217 Ga. App. 492, 494 (458 SE2d 162) (1995).

At trial and at the motion for new trial hearing, Knotts testified that after Michael Harman confessed to the burglary of his uncle's home, he directed Knotts to the trailer where he sold the items to a man named "Walt." Knotts drove out to the area and photographed several of the homes. Harman identified 1680 Flint Hill Highway as the subject trailer. Knotts then ran the address through Accurint, a computer service database used by police, which came back to Rosa Lee Jarrett, Jarrett's mother. Knotts explained that he was familiar with a man named "Walt," a/k/a Earnest Jarrett, and that when he ran the emergency contact number Earnest had listed when he was booked into jail previously, it matched the telephone number for the address of 1680 Flint Hill Highway. Knotts also testified that he was familiar with the property from prior investigations. Knotts then obtained a search warrant.

At the motion for new trial hearing, Jarrett presented evidence of an Accurint printout showing Rosa Lee Jarrett's name connected to the property from October 2004 to February 2005. Additionally, according to the printout, the only property ever registered to Rosa Lee Jarrett was located at 220 Jarrett Road. Jarrett also presented evidence showing that even though Earnest Jarrett listed the telephone number associated with 1680 Flint Highway when he was booked into jail on a prior arrest, he did not list the 1680 Flint Highway address; rather he listed the 220 Jarrett Road address. Jarrett also points out that in his affidavit, Knotts averred that "[Michael] Harman also was shown a photo lineup and he picked out Earnest Jarrett's picture and stated that he was the black male that he gave the stolen items to and received the Crack Cocaine from Earnest Jarrett." At trial, Knotts testified that Harman did not make a "100-percent" identification of Earnest, but said he looked familiar. Jarrett now contends that this evidence demonstrates Knotts's reckless disregard for the truth. We do not agree.

> In determining whether an affidavit provided sufficient probable cause, the issuing magistrate or judge must make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the veracity and basis of knowledge of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a "substantial basis for concluding" that probable cause existed.[24]

---

[24] (Footnote omitted.) *Smithson v. State*, 275 Ga. App. 591, 595 (2) (621 SE2d 783) (2005).

Additionally,

> [a]n affidavit is presumed valid in the absence of evidence that it contained deliberate falsehoods, was made with reckless disregard for the truth, or that the affiant consciously omitted material facts that, if included, would have indicated the absence of probable cause.[25]

The record does not support Jarrett's contention that Knotts recklessly disregarded the truth or obtained the search warrant through misrepresentation. Even though Jarrett's evidence may raise some doubt as to the true owner of the property, it does not prove that the information in the affidavit is false. Knotts testified that he obtained information about the home through a computerized intelligence database used by police and based on his personal knowledge of the identity of "Walt." Additionally, Knotts averred that when he showed the house photographs to Harman, he picked out the address of 1680 Flint Hill Highway as the place he traded stolen goods. Contrary to Jarrett's contention, "[since] ownership of the house is largely immaterial to the existence of probable cause, inclusion of this information in the affidavit does not require [a ruling in Jarrett's favor]."[26]

Under the totality of the circumstances, we conclude that the information in the affidavit provided the magistrate a substantial basis for concluding that probable cause existed for issuing the search warrant. Accordingly, a motion to suppress the search warrant would have been futile and Jarrett's claim of ineffective assistance of counsel grounded on the failure to file such a motion is meritless. "Failure to pursue a futile motion does not constitute ineffective assistance."[27]

*Judgment affirmed. Johnson, P. J., and Ellington, J., concur.*

DECIDED AUGUST 5, 2009.

*Robert L. Wadkins, Stephanie N. Wald*, for appellant.

---

[25] (Footnote omitted.) *Celestin v. State*, 296 Ga. App. 727, 735 (3) (c) (675 SE2d 480) (2009).

[26] (Footnote omitted.) *Crow v. State*, 267 Ga. App. 188, 192 (4) (598 SE2d 824) (2004).

[27] (Punctuation and footnote omitted.) *Fortson v. State*, 283 Ga. App. 120, 122 (2) (640 SE2d 693) (2006).

*J. Gray Conger, District Attorney, LaRae D. Moore, Julia F. Slater, David B. Ranieri, Assistant District Attorneys*, for appellee.