**FIFTH DIVISION**
**PHIPPS, P. J.,**
**DILLARD and PETERSON, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**October 25, 2016**

# In the Court of Appeals of Georgia

A16A0944. MCGLOTHLIN v. THE STATE.

PHIPPS, Presiding Judge.

A jury found Toby Anthony McGlothlin guilty of enticing a child for indecent purposes and child molestation. He appeals, arguing that the State failed to disclose exculpatory information regarding an informant and that he received ineffective assistance of counsel at trial. For reasons that follow, we affirm.

Construed favorably to the jury's verdict,[1] the evidence shows that in 2004, McGlothlin began living with Maria Bergener, her husband, and their six-year-old son, J. B., who had been adopted out of foster care. As part of his responsibilities

---

[1] See *Al-Amin v. State*, 278 Ga. 74 (1) (597 SE2d 332) (2004) ("On appeal from a criminal conviction, we view the evidence in a light most favorable to the verdict, and the defendant no longer enjoys the presumption of innocence.") (citation omitted).

around the house, McGlothlin helped Bergener with J. B., babysitting and getting him ready for bed. On these occasions, McGlothlin was alone with the child.

In August 2004, Bergener attended a counseling session with J. B. to address issues he had with his birth mother. J. B. inquired during the session whether he "could tell a secret." He then stated: "Toby asked me to pee in his mouth." Following the session, J. B. told Bergener that, while giving him a bath, McGlothlin had washed his penis, asking him if he liked it when McGlothlin put soap or lotion on his penis in different ways. Bergener and her husband sat down with J. B. shortly after the outcry, seeking additional details. At that point, J. B. disclosed that McGlothlin had also wanted to urinate in J. B.'s mouth.

Bergener reported the outcry to the authorities and took J. B. for a forensic interview. J. B. told the interviewer that McGlothlin had washed J. B.'s penis, touching it with his hand, and had asked if J. B. wanted to "pee in [McGlothlin's] mouth," but J. B. said "no." J. B. also stated that McGlothlin had shown J. B. his penis and "[s]ometimes it was pointy."

The police contacted McGlothlin, who submitted to a recorded interview with the lead detective. McGlothlin denied touching J. B. inappropriately, but indicated that his arm might have inadvertently bumped J. B.'s penis while he was washing

2

J. B.'s leg, "or something like that." Following the interview, McGlothlin called the detective, asking "[w]hat if I need some help?" and "[w]hat if I did do what [J. B.] said I did but not exactly the way [J. B.] said I did?" McGlothlin was arrested, and the detective subsequently received information from two jail inmates that McGlothlin had made inculpatory statements to them. According to the inmates, both of whom testified at trial, McGlothlin admitted that he had performed oral sex on J. B. and that the boy had urinated in his mouth.

McGlothlin was charged with enticing a child for indecent purposes, aggravated child molestation by placing his mouth on J. B.'s penis, and child molestation by rubbing J. B.'s penis. The jury found McGlothlin guilty of enticing a child and child molestation, but not guilty of aggravated child molestation. McGlothlin filed a motion for new trial, which the trial court denied. This appeal followed.

1. McGlothlin argues that he is entitled to a new trial because the State failed to disclose an agreement that police made with Kevin Kinney, one of the jailhouse informants who testified against him. Kinney asserted at trial that the State had not promised him anything or made any deals in exchange for his testimony. At the new trial hearing, however, McGlothlin offered evidence that, after testifying, Kinney

received a sentence reduction pursuant to a consent decree that referenced a pre-trial promise by police officers to help Kinney secure the reduction.

Pursuant to *Brady v. Maryland*[2] and *Giglio v. United States*,[3] the State must disclose material evidence that is favorable to the defendant, including impeachment evidence that could be used to show bias or interest on the part of witnesses called by the State.[4] "[T]he State is under a duty to reveal any agreement, even an informal one, with a witness concerning criminal charges pending against that witness, and a failure to disclose such an agreement constitutes a violation of the due process requirements."[5] To show a violation, a defendant must demonstrate

> that the State possessed evidence of the deal; that the defendant did not possess the evidence nor could he obtain it himself with any reasonable diligence; that the State suppressed evidence of the deal; and that, had the evidence of the deal been disclosed to the defendant, there existed a reasonable probability that the result at trial would have been different.[6]

---

[2] 373 U. S. 83 (83 SCt 1194, 10 LE2d 215) (1963).

[3] 405 U. S. 150 (92 SCt 763, 31 LE2d 104) (1972).

[4] *Ford v. State*, 273 Ga. App. 290, 291 (614 SE2d 907) (2005).

[5] Id. (citations omitted).

[6] Id. (citations omitted).

Pretermitting whether a duty to disclose existed here, McGlothlin cannot establish a reasonable probability that the trial result would have been different had the deal with Kinney been revealed. Such evidence might have provided fodder for cross-examining and impeaching Kinney's testimony. But much of that testimony described McGlothlin's alleged admission that he had engaged in oral sex with J. B., evidence that related to the aggravated child molestation charge. And the jury acquitted McGlothlin of aggravated child molestation. Even without evidence of the deal, therefore, jurors rejected a significant portion of Kinney's testimony.[7]

Kinney also testified about the child molestation allegation for which McGlothlin was convicted, asserting at trial that McGlothlin had admitted touching J. B.'s "private parts." The State, however, presented significant other evidence regarding this allegation. J. B. told his mother that McGlothlin had touched his penis, and the jury watched the forensic interview in which J. B. made a similar report.

---

[7] See *Granger v. State*, 320 Ga. App. 580, 582-583 (1) (740 SE2d 313) (2013) (in ineffective assistance context, no reasonable probability that trial result was impacted by trial counsel's failure to object to testimony that bolstered child victim's testimony where verdict of acquittal on several charges demonstrated that jury had not found victim credible); *Jarrett v. State*, 299 Ga. App. 525, 531 (7) (b) (683 SE2d 116) (2009) (in ineffective assistance context, counsel's failure to object to allegedly improper character evidence implicating defendant in drug trade did not impact verdict where jury acquitted defendant of all drug-related offenses).

Furthermore, McGlothlin intimated to the lead detective that he might have done "what [J. B.] said." Given this evidence, McGlothlin cannot demonstrate a reasonable probability that the verdict would have been different had the State disclosed the alleged deal with Kinney, a witness whom jurors apparently had already found lacking in credibility.[8]

2. McGlothlin contends that he received ineffective assistance of counsel at trial. Specifically, he argues that trial counsel was ineffective because she failed to object to the admission of his recorded police interview, which "contained an agreement to take a polygraph test and a false assertion that [he] was a convicted felon." To prevail on this claim, McGlothlin must show "(1) that counsel's performance was deficient and (2) that the deficient performance prejudiced the defense by creating a reasonable probability that but for counsel's errors, the outcome

---

[8] See *Moclaire v. State*, 215 Ga. App. 360, 361 (1) (451 SE2d 68) (1994) (because non-disclosed evidence did not "undermine confidence in the outcome of the trial," the trial court was justified in denying defendant's motion for new trial).

of the trial would have been different."[9] Failure to satisfy either prong of this two-part test is fatal to a defendant's ineffective assistance claim.[10]

(a) During the police interview, the lead detective accused McGlothlin of being a felon. McGlothlin responded, "It's not like this. I don't have felonies," to which the detective replied, "You're telling me forgery is not a felony?" McGlothlin stated: "But I was innocent. And it says so. It was dismissed." He then explained the circumstances underlying the alleged forgery incident, asserting again that "it" was "dropped." McGlothlin contends that trial counsel should have objected to this portion of the interview because it improperly placed his character in issue.

Even if an objection would have been appropriate, McGlothlin cannot demonstrate a reasonable probability that exclusion of this discussion would have altered the trial result. Although the detective accused McGlothlin of being a "felon" and committing forgery, McGlothlin immediately refuted the statement, explaining

---

[9] *Dyer v. State*, 295 Ga. App. 495, 498 (1) (672 SE2d 462) (2009) (citation and punctuation omitted).

[10] *Reed v. State*, 291 Ga. 10, 16 (4) (b) (727 SE2d 112) (2012); *Jarrett*, supra at 530-531 (7).

that the forgery charge had been dismissed.[11] Moreover, the jury acquitted McGlothlin of aggravated child molestation – the most serious charge against him – undermining his argument that the detective's "felon" reference prejudiced the jury against him.[12] Given these circumstances, as well as the evidence of guilt presented by the State, this ineffective assistance allegation fails.[13]

(b) McGlothlin also argues that trial counsel should have objected to admission of his police interview because he agreed in the interview to take a polygraph test. According to McGlothlin, reference to this agreement was inadmissible and would have been excluded had counsel objected.

---

[11] See id. at 500 (2) (defendant not prejudiced by prosecutor's questions about prior criminal charge where jury "heard no evidence refuting or contradicting [defendant's] testimony that he was acquitted of this charge"). We recognize that after McGlothlin refuted the felony accusation, the detective stated that he found McGlothlin to be "deceitful." McGlothlin, however, raises no claim of error concerning this statement. And viewed in context, the detective's comment related to his belief that McGlothlin was lying about his interaction with J. B., not about the forgery incident.

[12] See *Reed v. State*, 291 Ga. 10, 17 (4) (b) (727 SE2d 112) (2012) (acquittal on one of several charges "indicates that the jury likely was not prejudiced against [the defendant] because of" prosecution's allegedly improper closing argument).

[13] See id.; *Dyer*, supra.

Well before the trial court admitted the recorded interview, however, J. B.'s mother testified without objection that McGlothlin had consented to a polygraph examination. The detective who interviewed McGlothlin also testified about the agreement and McGlothlin's ultimate decision not to follow through with the examination. McGlothlin's enumerated error does not complain about trial counsel's performance with respect to testimony from J. B.'s mother or the detective. It focuses solely on admission of the police interview, as must we.[14]

The polygraph reference in the interview was cumulative of other evidence admitted at trial. Under these circumstances, and in light of the significant evidence supporting the jury's verdict, McGlothlin cannot demonstrate any likelihood that counsel's failure to object to the interview on this ground impacted the trial result.[15]

(c) Finally, to the extent that McGlothlin has shown or we have assumed that trial counsel's assistance was deficient, "we also find that the *cumulative* effect of any

[14] See *Riggs v. State*, 319 Ga. App. 189, 198 (5) (733 SE2d 832) (2012) ("A party cannot expand his enumerations of error through argument or citation in his brief.") (punctuation omitted).

[15] *Williams v. State*, 292 Ga. 844, 848 (3) (a) (742 SE2d 445) (2013) (defendant not prejudiced by counsel's failure to object to evidence that was cumulative of other evidence admitted at trial); *Anderson v. State*, 311 Ga. App. 732, 740 (2) (d) (716 SE2d 813) (2011) (same).

9

such deficiencies did not create a reasonable likelihood that the outcome of the trial would have been different but for any deficient performance."[16]

*Judgment affirmed. Dillard and Peterson, JJ., concur.*

---

[16] *Williams*, supra at 855 (3) (j) (citations omitted; emphasis in original).