**THIRD DIVISION
DOYLE, P. J.,
BROWN, J., and SENIOR APPELLATE JUDGE PHIPPS**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules**

**February 22, 2023**

# In the Court of Appeals of Georgia

A22A1521. MITCHELL v. THE STATE.

DOYLE, Presiding Judge.

A jury convicted Adam Mitchell of trafficking, manufacture of methamphetamine, possession with the intent to distribute, possession of methamphetamine, possession of altered ephedrine or pseudoephedrine, and conspiracy to manufacture methamphetamine.[1] The trial court denied his amended motion for new trial, and he now appeals, arguing that the trial court's denial was in error because (1) a witness provided false testimony, (2) certain counts on which Mitchell was sentenced were subject to merger, and (3) Mitchell received ineffective

---

[1] See OCGA §§ 16-13-31 (f); 16-13 -30 (a), (b); 16-13-30.3 (d) (2007); 16-13-33. Although Mitchell was also indicted on multiple charges of possession of a firearm by a convicted felon, the trial court entered a nolle prosequi regarding these charges.

assistance of counsel. For the reasons set forth infra, we affirm in part and vacate in part, and remand for resentencing.

Construed in favor of the verdict,[2] the record shows that in 2008, the Lookout Mountain drug task force investigated people buying large amounts of medications containing pseudoephedrine that were then sold to manufacture methamphetamine. The drug task force questioned Brian Jumper, who was on parole at the time, regarding his purchases of such medications. Jumper initially told police that he bought the pills because he had a cold, but when officers indicated that they did not believe his story, Jumper stated that he bought them for Mitchell who was using the pills to manufacture methamphetamine. At trial, Jumper testified that he had purchased pills for Mitchell on approximately five or six occasions, and Mitchell paid him with half a gram of methamphetamine each time. Jumper also testified that he saw Mitchell "cook" methamphetamine on one occasion.

Police arrested Jumper approximately a week after his interview. He entered a guilty plea and received a sentence of fifteen years with eight years to be served in confinement. Jumper's sentencing form stated that he was to "testify truthfully at

_____

[2] See *Toney v. State*, 304 Ga. App. 25 (695 SE2d 355) (2010).

[Mitchell's] trial[.]" At trial, however, when asked if he made "any deals to have to testify or anything that [he was] aware of[,]" Jumper answered that he had not.

The drug task force obtained a warrant to search Mitchell's property and discovered several items often used in the clandestine manufacturing of methamphetamine. Officers also discovered coffee filters, which tested positive for methamphetamine, and a coffee grinder whose lid tested positive for ephedrine or pseudoephedrine. The arresting officer testified at trial that Mitchell informed the officer that he had "cooked" and used methamphetamine, and that Mitchell had stated that he had secured medicine containing pseudoephedrine from Jumper and others by providing them cash or methamphetamine in exchange for the pills. The officer also testified that Mitchell had stated that he learned the drug task force was "visiting" people, and that he subsequently decided to clean up the items he used to manufacture methamphetamine, which according to the officer, explained why some items they discovered appeared to have been hidden.

A jury found Mitchell guilty on all counts, and he filed a motion for new trial.[3] Following a hearing, the trial court denied Mitchell's motion for a new trial, and he filed this appeal.

When reviewing a claim that the State failed to correct false testimony, we accept the court's factual findings unless clearly erroneous, while we review the court's application of the law to the facts de novo.[4] Additionally, "[t]he question of whether offenses merge is a legal question that we review de novo."[5] Finally, "[w]hen reviewing a trial court's ruling on the effectiveness of trial counsel, we accept the trial court's factual findings and credibility determinations unless clearly erroneous, but

---

[3] We note that Mitchell's case was tried and his original motion for new trial was filed in 2009, but his motion for new trial hearing was not held and an order on his motion was not entered until 2021. We do not condone this delay. As the Supreme Court of Georgia has stated, "[t]hese delays put at risk the rights of defendants and crime victims and the validity of convictions obtained after a full trial. . . . [I]t is the duty of all those involved in the criminal justice system. . . to ensure that the appropriate post-conviction motions are filed, litigated, and decided without unnecessary delay." *Shank v. State*, 290 Ga. 844, 849 (5) (c) (725 SE2d 246) (2012). (punctuation omitted).

[4] See *Hood v. State*, 311 Ga. 855, 863 (1) (860 SE2d 432) (2021) (citing the standard of review for similar *Brady* claim); *Love v. State*, 349 Ga. 741, 746 (3) (824 SE2d 745) (2019).

[5] *Morris v. State*, 340 Ga. App. 295, 312 (7) (797 SE2d 207) (2017).

we independently apply the legal principles to the facts."[6] With these guiding principles in mind, we turn now to Mitchell's claims of error.

1. Mitchell argues that the trial court erred in denying his motion for new trial because the State's witness provided false testimony at trial. Specifically, Mitchell asserts that he was entitled to a new trial because Jumper denied having an agreement to testify at Mitchell's trial, the State knowingly failed to correct this false testimony, and the false statement was material to the trial's outcome.

> In general, a *Giglio*[7] claim alleges that a prosecutor knowingly presented false testimony against the defendant. To establish a *Giglio* violation, it must be shown that: (1) the testimony given was false; (2) the prosecutor knew the testimony was false; and (3) the statement was material.[8]

Here, the State does not dispute that Jumper offered false testimony, i.e., falsely stating that he did not have an agreement with the State to testify at Mitchell's trial.

---

[6] (Citation and punctuation omitted.) *Evelyn v. State*, 347 Ga. App. 368, 371 (819 SE2d 657) (2018).

[7] *Giglio v. United States*, 405 U. S. 150, 153-154 (92 SCt 763, 31 LE2d 104) (1972).

[8] (Citations and punctuation omitted.) *Love*, 349 Ga. App. at 746 (3).

However, "[t]he burden is on the defendant to prove each of these elements[,]"[9] and reversal of the trial court is required "only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different."[10]

When considering whether false testimony offered at trial was material, this Court has held that "the false evidence is material if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury."[11] Here, a search of Mitchell's property uncovered several items and substances associated with the clandestine manufacture of methamphetamine. Additionally, the arresting officer testified that Mitchell had admitted he both used and manufactured methamphetamine, that Mitchell had detailed how he secured the substances used to manufacture the drug, and that Mitchell secured pills from Jumper and others by paying for them in cash and methamphetamine, which was consistent with Jumper's testimony. Mitchell also, according to the arresting officer, stated that he heard that

[9] (Citations and punctuation omitted.) *Alford v. State*, 293 Ga. App. 512, 515 (2) (667 SE2d 680) (2008).

[10] (Citation and punctuation omitted.) *Dinning v. State*, 266 Ga. 694, 697 (2) (470 SE2d 431) (1996).

[11] *Love*, 349 Ga. App. at 746 (3).

6

the drug task force had been visiting people, and that he needed to clean up some of the items used to manufacture methamphetamine, which explained why some items discovered during the search were hidden. Although Mitchell denied these statements, "it is the function of the jury, not the appellate court, to resolve conflicts in the testimony and determine the credibility of the witnesses."[12] Thus, there was substantial evidence supporting the jury's verdict.

Additionally, while Jumper's agreement to testify could have been used to question his credibility, Mitchell's trial counsel challenged Jumper's credibility at trial through other testimony. For example, Mitchell's trial counsel highlighted the fact that Jumper only told the police that he bought the pills for Mitchell after the officers stated that they did not believe his initial story. Moreover, trial counsel highlighted the fact that Jumper was at Mitchell's house before the drug task force's search, and counsel asked the arresting officer whether it was possible that Jumper may have planted some of the evidence found on Mitchell's property in hopes of working out "a decent plea[.]" Thus, although the fact that Jumper had an agreement

---

[12] (Citation and punctuation omitted.) *Tucker v. State*, 276 Ga. App. 117, 119 (1) (622 SE2d 466) (2005).

with the State could have been used to challenge his credibility further, his credibility was questioned on other grounds during the trial.[13]

Therefore, given the evidence of guilt presented by the State, Jumper's false testimony was not material as there was no reasonable probability that, had the agreement been disclosed, the result of the proceeding would have been different.[14]

2. Mitchell argues, and the State concedes, that the trial court erred when it failed to merge Count 6 (conspiracy to manufacture methamphetamine) and Count 2 (manufacturing methamphetamine). We agree.

---

[13] See *DeLoach v. State*, 308 Ga. 283, 294-295 (3) (c) (840 SE2d 396) (2020) (holding that the false testimony the witness did not have an agreement with the prosecution was not material where the witness's credibility had been called into question through other testimony).

[14] See *McGlothlin v. State*, 339 Ga. App. 371, 373 (1) (791 SE2d 645) (2016) (holding that failure to disclose a witness's agreement with police to obtain a reduced sentence was not material given the other evidence offered of his guilt); compare *Byrd v. Owen*, 272 Ga. 807, 811 (1) (536 SE2d 736) (2000) (affirming the grant of habeas relief because the State's failure to disclose an immunity agreement with a witness was material where the witness was, inter alia, the only person who had full insight into the defendant's alleged motive, the witness's testimony was not duplicated elsewhere in the record, and the witness had first-hand knowledge of the defendant's involvement in drug trafficking); *Allen v. State*, 128 Ga. App. 361, 364 (196 SE2d 660) (1973) (holding that failure to disclose a promise of leniency was material because the individual was the sole eyewitness testifying for the state as to the aggravated battery).

In Georgia, "conspiracy clearly is merged into the greater crime where the evidence shows without dispute that the crime charged was actually committed[.]"[15] Here, Mitchell was convicted of conspiracy to manufacture methamphetamine, but was also found guilty of the greater crime of manufacturing methamphetamine. However, "a verdict of guilt as to the completed crime will preclude a verdict of guilt for conspiring to commit that crime, since the conspiracy to commit an offense merges into the actually completed offense."[16] Therefore, Mitchell's sentence on the charge of conspiracy to manufacture methamphetamine is vacated, and we remand the case to the trial court for resentencing in accordance with this opinion.

3. Mitchell asserts that the trial court erred when it failed to merge Count 5 (possession of altered ephedrine-pseudoephedrine) into Count 2 (manufacture of methamphetamine).

It is unlawful in Georgia for any person to possess a product containing any amount of ephedrine or pseudoephedrine that has been altered from its original

---

[15] (Citation and punctuation omitted.) *Evans v. State*, 161 Ga. App. 468, 471 (2) (288 SE2d 726) (1982); see OCGA § 16-4-8.1 ("[A] person may not be convicted of both conspiracy to commit a crime and the completed crime."); *Johnson v. State*, 279 Ga. App. 182, 183-184 (2) (a) (630 SE2d 778) (2006) (same).

[16] (Emphasis omitted.) *Raftis v. State*, 175 Ga. App. 893, 895 (2) (334 SE2d 857) (1985).

9

condition to be powdered, liquefied, or crushed,[17] and it is unlawful for any person to manufacture a controlled substance, including methamphetamine.[18]

Here, a search of Mitchell's property uncovered items associated with the manufacture of methamphetamine, including coffee filters that tested positive for methamphetamine, as well as a coffee grinder, whose lid contained a powder that tested positive for ephedrine or pseudoephedrine. Mitchell was indicted for manufacturing methamphetamine and for the possession of altered ephedrine or pseudoephedrine based on the powder discovered in the coffee grinder lid. The jury could have found Mitchell guilty of possession of ephedrine-pseudoephedrine based on the powder found in the coffee grinder lid and also could have found him guilty of manufacturing methamphetamine based on the various items located on his property, as well as the methamphetamine found in the coffee filters.[19] "Because the evidence supported a conclusion that different conduct by [Mitchell] resulted in the commission of both . . . manufacture of methamphetamine and possession of

---

[17] OCGA § 16-13-30.3 (d) (2007).

[18] OCGA § 16-13-30 (b).

[19] See *Taylor v. State*, 320 Ga. App. 596, 606 (3) (740 SE2d 327) (2013).

10

ephedrine and pseudoephedrine, the two crimes do not merge[,]"[20] and therefore, the trial court did not err in refusing to merge Count 5 and Count 2.

4. Mitchell argues that the trial court erred in denying his motion for new trial because trial counsel rendered ineffective assistance in several respects.

To establish a claim of ineffective assistance, Mitchell must show both that his counsel's performance was deficient and that he was prejudiced as a result of the deficient performance.[21] To prove deficient performance, Mitchell must "demonstrate that the lawyer performed his duties in an objectively unreasonable way, considering

---

[20] *Taylor*, 320 Ga. App. at 606 (3); see *Dahlman v. State*, 311 Ga. App. 465, 466-467 (2) (716 SE2d 538) (2011) (holding that the crimes of manufacturing methamphetamine and possession of substances with the intent of manufacturing methamphetamine did not merge because the evidence showed that the defendant had already completed the manufacture of methamphetamine and also possessed substances with the intent to use them to manufacture more methamphetamine in the future); compare *Goldsby*, 273 Ga. App. 523, 529-530 (6) (615 SE2d 592) (2005) (holding that the crimes of manufacturing and trafficking methamphetamine merged when both convictions were based on a single quantity of methamphetamine); *Gooch v. State*, 249 Ga. App. 643, 648 (5) (549 SE2d 724) (2001) (holding that the convictions of possession and possession with the intent to distribute methamphetamine merged because both were based on the same evidence).

[21] See *Washington v. State*, 313 Ga. 771, 773 (3) (873 SE2d 132) (2022) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (III) (104 SCt 2052, 80 LE2d 674) (1984)).

11

all the circumstances and in light of prevailing professional norms."[22] In order to overcome the "strong presumption that counsel performed reasonably," Mitchell "must show that no reasonable lawyer would have done what his lawyer did, or would have failed to do what his lawyer did not."[23] To prove prejudice, Mitchell "must demonstrate that there is a reasonable probability that, but for counsel's deficiency, the result of the trial would have been different."[24] "A reasonable probability is a probability sufficient to undermine confidence in the outcome. This burden, though not impossible to carry, is a heavy one."[25] If Mitchell fails to make a sufficient showing on one prong, we need not address the other prong.[26]

(a) *Failure to investigate or discover evidence.*

Mitchell argues that his trial counsel was ineffective because he failed to discover that the State had a deal with Jumper to testify at his trial, and therefore was unable to use this deal to challenge Jumper's credibility at trial. However, assuming

---

[22] (Citation and punctuation omitted.) *Washington*, 313 Ga. at 773 (3).

[23] (Citation and punctuation omitted.) Id.

[24] Id.

[25] (Citation and punctuation omitted.) *Neal v. State*, 313 Ga. 746, 751 (3) (873 SE2d 209) (2022).

[26] *Washington*, 313 Ga. at 773 (3).

12

without deciding that trial counsel was deficient in failing to learn of the deal between Jumper and the State, Mitchell has failed to demonstrate that the introduction of this agreement would have prejudiced him. As discussed in Division 1, supra, in light of the evidence of guilt presented, there is not a reasonable probability that disclosure of Jumper's deal with the State to testify at trial would have led to a different outcome.[27] Failure to prove that the witness's false testimony prejudiced Mitchell means that he is also unable to demonstrate prejudice in his ineffective assistance of counsel claim.[28]

(b) *Failure to move to suppress the fruits of a search pursuant to a search warrant.*

---

[27] See *McGlothlin*, 339 Ga. App. at 373 (1).

[28] See *Harris v. State*, 309 Ga. 599, 607 (2) (b) (847 SE2d 563) (2020) (holding that an appellant who cannot establish the prejudice element of a *Brady* claim, also cannot prove prejudice for an ineffective assistance of counsel claim); see also *Strickland*, 466 U.S. at 694 (III) (B) ("[T]he appropriate test for prejudice [in an ineffective assistance of counsel claim] finds its roots in the test for materiality of exculpatory information not disclosed to the defense by the prosecution"); see also e.g., *Colbert v. State*, 345 Ga. App. 554, 555 (1) (813 SE2d 777) (2018) (noting that, under *Brady* and *Giglio* claims, a defendant must show a reasonable probability that the result of trial would have been different).

13

Mitchell argues that his trial counsel was deficient for not filing a motion to suppress the evidence discovered during the search of Mitchell's property because the search warrant was not supported by probable cause.

As the Supreme Court of Georgia has held, "[w]here, as here, trial counsel's failure to file a motion to suppress is the basis for a claim for ineffective assistance, the burden is on the appellant to make a strong showing that the damaging evidence would have been suppressed had counsel made the motion."[29] Additionally,

> [t]he duty of an appellate court reviewing a search warrant is to determine, based on the totality of the circumstances, whether the magistrate had a substantial basis for concluding that probable cause existed to issue the search warrant. A magistrate's decision to issue a search warrant based on a finding of probable cause is entitled to substantial deference by a reviewing court and even doubtful cases should be resolved in favor of upholding a magistrate's determination that a warrant is proper. The probable cause test requires only a fair probability — less than a certainty but more than a mere suspicion or possibility — which by no means is to be equated with proof by even so much as a preponderance of the evidence.[30]

---

[29] (Citation and punctuation omitted.) *Crayton v. State*, 298 Ga. 792, 797 (3) (b) (784 SE2d 343) (2016).

[30] (Citations and punctuation omitted.) *Young v. State*, 309 Ga. 529, 540-541 (4) (847 SE2d 347) (2020).

In the present matter, an anonymous informant contacted the officer applying for the warrant and stated that Mitchell had invited him or her to Mitchell's shop and offered the individual methamphetamine. The individual also stated that while in Mitchell's shop the informant had actually observed methamphetamine in bags and a pipe used to smoke methamphetamine.[31] Although the affidavit did not indicate when this encounter occurred, it did state that the individual had provided the information to the affiant 24 hours before the affiant applied for the warrant. Additionally, the affiant received two tips from named informants, one of whom was Jumper, who provided statements against their penal interest that they sold pseudoephedrine pills to Mitchell to manufacture methamphetamine, with one such exchange occurring days before the officer applied for the warrant.[32] As the Supreme Court of Georgia has held in evaluating a search warrant, "[p]robable cause does not

[31] See *Williams v. State*, 316 Ga. App. 383, 385 (729 SE2d 517) (2012) (holding that the defendant failed to establish prejudice for failing to file a motion to suppress because an informant's reliability was established, inter alia, by his personal observation of methamphetamine at the defendant's residence).

[32] See *Land v. State*, 259 Ga. App. 860, 862 (578 SE2d 551) (2003) (holding that "[t]ime is assuredly an element of the concept of probable cause[ ]" when reviewing a search warrant) (citation and punctuation omitted); *Sosebee v. State*, 227 Ga. App. 21, 23 (488 SE2d 102) (1997) ("When a named informant makes a declaration against her penal interest and based on personal observation, that in itself provides a substantial basis for the magistrate to credit her statement.").

15

demand the certainty we associate with formal trials. The issuing magistrate . . . need only conclude that there is a fair probability that contraband or evidence of a crime will be found in a particular place."[33] Accordingly, Mitchell has not made the required strong showing that the warrant lacked probable cause, and that a motion to suppress would have been successful.[34]

Additionally, at the motion for new trial hearing, trial counsel testified that his decision not to file the motion to suppress was a strategic one, based on his belief that the motion would have been unsuccessful and that it would have impacted plea negotiations with the State. "As a general rule, matters of reasonable tactics and strategy, whether wise or unwise, do not amount to ineffective assistance of counsel. The decision of whether to file a motion to suppress is a matter of professional judgment."[35]

Therefore, we conclude that trial counsel was not deficient in declining to move to suppress evidence discovered during the execution of a search warrant.

---

[33] (Citation and punctuation omitted.) *State v. Stephens*, 252 Ga. 181, 184 (311 SE2d 823) (1984).

[34] See id.

[35] (Citation and punctuation omitted.) *Quinn v. State*, 355 Ga. App. 352, 353 (2) (a) (842 SE2d 541) (2020).

(c) *Failure to object to expert witness's testimony.*

Mitchell argues that his trial counsel was ineffective for failing to object to testimony from the State's expert witness because the witness's testimony included opinions of non-testifying individuals, which constituted inadmissible hearsay and violated Mitchell's Sixth Amendment rights, and because the witness's testimony was not based on facts properly admitted into evidence.

At trial, an expert witness with the Georgia Bureau of Investigation's crime lab testified that coffee filters and the lid to a coffee grinder recovered from Mitchell's property tested positive for methamphetamine and ephedrine or pseudoephedrine respectively. The witness's testimony and conclusions were based on his review of data from tests performed by two other lab employees, who reached the same conclusions, but neither the lab results nor the reports were entered into evidence.

Although Mitchell asserts that the witness's testimony was inadmissible hearsay and not allowing him to cross-examine the lab technician violated his Sixth Amendment confrontation rights, this argument is unpersuasive.[36] The Supreme Court of Georgia has held that "someone with a significant personal connection to the test

_____

[36] See *Carolina v. State*, 302 Ga. App. 40, 41 (690 SE2d 435) (2010).

17

could testify in lieu of the scientist who actually conducted it."[37] The Court further clarified that

> there is a critical distinction between cases where the lab results were admitted into evidence and those where the lab results were merely used in an expert's opinion. Where the results of a laboratory test are not being admitted into evidence, but are instead being used to form part of the basis for an expert's opinion, it is not necessarily an abuse of discretion to allow an expert to testify about the lab results.[38]

Accordingly, the trial court did not abuse its discretion here in allowing the expert to testify based on his review of data not admitted into evidence, and likewise, Mitchell's trial counsel was not deficient in declining to object to this testimony.[39]

(d) *Failure to object to the use of prior bad acts.*

---

[37] *Taylor v. State*, 303 Ga. 225, 230 (4) (811 SE2d 286) (2018).

[38] Id.; see also *Rector v. State*, 285 Ga. 714, 715 (4) (681 SE2d 157) (2009) (trial court did not err by allowing a toxicologist to testify regarding a report prepared by another doctor where the witness reviewed the report and reached the same conclusion)*; Reddick v. State*, 298 Ga. App. 155, 158 (2) (679 SE2d 380) ( 2009) ("[A]n expert may base his opinion on data collected by others.") (citation and punctuation omitted).

[39] See *Rector*, 285 Ga. at 715 (4) (holding that counsel was not ineffective for failing to object to testimony from an expert witness based on a report prepared by another person).

18

Mitchell argues that his trial counsel was ineffective because he failed to object to testimony that Mitchell claims impermissibly introduced his character into evidence. Specifically, Mitchell asserts that the State improperly interjected prior bad acts by asking about his previous drug use and his employment status during his cross-examination.

Here, the arresting officer initially testified that Mitchell stated that he had used methamphetamine for approximately three or four years and also manufactured and sold methamphetamine. However, during his testimony, Mitchell denied using or manufacturing methamphetamine, and stated that the arresting officer was lying. The State then crossed-examined Mitchell on his statements regarding his manufacturing of methamphetamine, and asked how he was able to afford his truck given that he had not worked outside his home in four or five years, in addition to asking whether he had lost his previous job due to drug use. In the present case, the State did not impermissibly introduce prior bad acts through its cross-examination, but instead

impeached Mitchell regarding his prior statements.[40] Therefore, trial counsel was not deficient in failing to object to this line of questioning.

However, even assuming arguendo that trial counsel was deficient, Mitchell failed to show that this testimony prejudiced him. Because the arresting officer and Jumper had already testified to Mitchell's use and manufacturing of methamphetamine, in addition to items recovered from his property that tested positive for methamphetamine and ephedrine or pseudoephedrine, there is no reasonable probability that the trial's outcome would have been different had the testimony not been introduced.[41]

(e) *Failure to object to non-testifying informants' statements.*

Mitchell argues that trial counsel was ineffective when he failed to object to the introduction of non-testifying informants' out-of-court statements. Although Mitchell does not specify which out-of-court statements he was referencing, it appears he is

---

[40] See *Arnold v. State*, 305 Ga. App. 45, 52 (4) (699 SE2d 77) (2010) ("A witness may be impeached by disproving facts to which he has testified. Even evidence that would be inadmissible if offered to impeach the defendant's character may be admissible to impeach the veracity of a witness.") (citation and punctuation omitted).

[41] See *Sharpe v. State*, 288 Ga. 565, 567 (4) (707 SE2d 338) (2011) (holding that admission of bad character evidence was harmless in light of the overwhelming evidence of the defendant's guilt).

referring to when the State asked Mitchell about statements included in the affidavit attached to the search warrant application, which stated that Mitchell possessed and was manufacturing methamphetamine. However, because this testimony is cumulative of other testimony offered by the arresting officer and Jumper regarding Mitchell's manufacturing of methamphetamine, we conclude that there was not a reasonable probability that the admission of this testimony would have resulted in a different outcome, and therefore it was not prejudicial.[42]

(f) *Cumulative effect of errors*.

Mitchell summarily asserts that trial counsel's cumulative errors were prejudicial and justified a new trial. However, Mitchell's "cumulative error argument fails because there are no errors to cumulate."[43] Accordingly, the court did not err in refusing to grant Mitchell's motion for new trial based on his claim of ineffective assistance of counsel.

---

[42] See *Payne v. State*, 314 Ga. 322, 330 (3) (b) (877 SE2d 202) (2022) (holding that the defendant had failed to show prejudice where challenged testimony on hearsay grounds was cumulative).

[43] (Citations and punctuation omitted.) *Green v. State*, 358 Ga. App. 843, 855 (8) (856 SE2d 427) (2021); see *Crider v. State*, 356 Ga. App. 36, 50 (4) (846 SE2d 205) (2020) (holding that where the appellant has failed to show error, the appellant fails to show cumulative error).

21

Therefore, to summarize, we affirm the court's denial of Mitchell's motion for new trial, but vacate Mitchell's sentence on charges of conspiracy to manufacture methamphetamine (Count 6) and manufacturing of methamphetamine (Count 2) as these counts should have merged, and accordingly remand the case to the trial court for resentencing consistent with this opinion.

*Judgment affirmed in part and vacated in part, and case remanded for resentencing. Brown, J., and Senior Appellate Judge Herbert E. Phipps concur.*